STEPHENS et al., Appellants,

v.

A–ABLE RENTS COMPANY et al., Appellees.

[Cite as *Stephens v. A–Able Rents Co.* (1995), 101 Ohio App.3d 20.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 66753, 66903.

Decided Feb. 6, 1995.

---

22

*Dubyak & Goldense, David W. Goldense* and *Paul V. Wolf,* for appellants.

*Weston, Hurd, Fallon, Paisley & Howley Co., L.P.A.,* and *Scott C. Smith,* for appellees.

---

PATRICIA ANN BLACKMON, Judge.

Marie and Edward Stephens, plaintiffs-appellants, appeal the decision of the trial court granting summary judgment in favor of A–Able Rents Company and

Gregory Stanley, defendants-appellees. The Stephenses assign the following errors for our review:

"I. The trial court committed prejudicial error in granting defendants' motion for summary judgment where a jury reasonably could have found that appellee A–Able Rents was negligent in its hiring of Jonathan Taylor.

"II. The trial court erred to the prejudice of plaintiffs-appellants in granting defendant-appellees' motion for summary judgment where a jury could conclude that defendant A–Able Rents' omission in failing to register with the Public Utilities Commission of Ohio and blatant disregard for the safety of the public that have a great probability of causing substantial harm amounting to actual malice, thus rendering appropriate an award of punitive damages.

"III. The trial court committed prejudicial error in granting defendant-appellee A–Able Rents' motion for summary judgment where a jury reasonably could conclude that defendant Gregory Stanley was negligent and that his negligence was imputable to A–Able Rents under the doctrine of respondeat superior.

"IV. Jonathan Taylor's felonious assault and attempted rape of Marie Stephens were perpetrated within the scope and course of his employment with defendant A–Able Rents, precluding summary judgment sought herein."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we reverse the decision of the trial court and remand this cause to the trial court for proceedings consistent with our opinion. The apposite facts follow.

On August 26, 1991, Marie Stephens allowed and trusted A–Able Rents' employees, Jonathan Taylor and Gregory Stanley, to enter her home to remove a roll-away bed. The roll-away bed belonged to A–Able Rents. After the first entrance, Jonathan Taylor entered again seeking to use the phone to get directions for his next pickup of A–Able Rents equipment. While in Marie Stephens's home and after using the telephone to receive directions, Jonathan Taylor reached his hand under Marie Stephens's dress. He punched her and kicked her. He struck her with a fireplace shovel, ripped off her dress, forced her to the floor, and attempted to rape her. At some point, he abandoned this violence on Marie Stephens and called for Stanley who was in the truck.

Stanley refused to enter the home. Instead, he went to a neighbor's house and called the police. Taylor eventually was arrested and convicted of attempted rape and felonious assault.

During his deposition for this case Taylor admitted to smoking crack cocaine the day before and the morning of his violent attack on Marie Stephens. Just before he entered Marie Stephens's home a second time, he had smoked crack.

He admitted smoking crack while employed at Kroblin's in Tulsa, Oklahoma, where he worked as a truck driver. Because his mileage was decreasing, a supervisor at Kroblin's asked Taylor to submit to a drug test. He refused and admitted to his supervisor he was abusing drugs. He resigned from Kroblin's shortly thereafter.

Had A–Able Rents investigated Taylor's job with Kroblin's, it would have learned of Taylor's drug abuse, and according to Kim Goodrick, a manager of A–Able Rents, he would not have hired Taylor had he known of this criminal conduct.

On Taylor's job application he listed Frank Kinlaw as a reference. Frank Kinlaw was Taylor's roommate and the person who smoked crack with Jonathan Taylor the day before his violent attack of Marie Stephens. A–Able Rents did not contact or interview Frank Kinlaw.

Taylor also showed on his job application from September 1987 to June 1989 that he worked at Kroblin's in Tulsa, Oklahoma. From May 1984 to May 1989, he showed he worked in Cleveland as a Specialist Finisher. Marie Stephens's expert, Thomas Bader, opined that this information should have been a "red flag" to A–Able Rents. This conflict in information should have prompted a call to both prior job references.

Because A–Able Rents did not have a procedure for investigating prospective job applicants, it did not note the conflict or heed its warning. Richard Owens's investigation of Taylor consisted of obtaining Taylor's driving record. Moreover, A–Able Rents did not drug test their drivers.

Marie and Edward Stephens filed a civil action against A–Able Rents, Stanley and Taylor, alleging negligent hiring and negligence under the theory of respondeat superior. They sought compensatory and punitive damages. Later Taylor was voluntarily dismissed as a party in that action. A–Able Rents and Stanley moved for summary judgment and the motion was granted. Marie and Edward Stephens now appeal.

■ Marie Stephens argues she trusted Taylor to enter her home because he worked for A–Able Rents. She trusted him a second time for that very reason. Consequently, A–Able owed her a duty of reasonable, ordinary care in hiring Taylor. It breached its duty to her when it failed to conduct the pre-employment investigation, interview, and drug screening. Moreover, she claims, this lack of reasonable, ordinary care proximately caused the violent attack on her person by Taylor. Additionally, she argues negligence *per se* and respondeat superior. Because we agree with her negligent hiring claim, we reverse this matter. A motion for summary judgment must be overruled if reasonable minds could find

for the nonmovant. *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 593 N.E.2d 24.

The standard of review for an appeal from summary judgment is plenary. This court applies the same test as the trial court, which test is set forth in Civ.R. 56, and we evaluate the record according to that rule. It specifically provides that before summary judgment may be granted, it must be determined that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

Moreover, it is well settled that the party seeking summary judgment bears the burden of showing no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. All factual doubts must be resolved in favor of the nonmovant. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

Because our review is plenary, we review the trial court's judgment independently and without deference to its judgment. *Brown v. Scioto Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. With these standards in mind, we turn to the law of negligent hiring. Negligent hiring is a recognized tort in Ohio and is separate and distinct from other theories of recovery such as negligent entrustment and respondeat superior. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 565 N.E.2d 584; *Bender v. First Church of the Nazarene* (1989), 59 Ohio App.3d 68, 571 N.E.2d 475.

The primary issue in a negligent hiring case is whether the employer knew or should have known of the employee's criminal or tortious propensities. *Byrd v. Faber,* 57 Ohio St.3d at 62, 565 N.E.2d at 590. In *Byrd v. Faber,* the Supreme Court held the plaintiff must focus the inquiry on the employer and not on what the employee did. If the plaintiff shows facts indicating the employee had a past history of criminal or tortious conduct about which the employer knew or should have known, summary judgment is improper and a question of fact is raised. Furthermore, the Supreme Court held the discussion should center on the employee's activity before and after he was hired. The relevant inquiry is whether facts existed that the employer should have known about, which facts would have prevented the employment relationship.

The facts in this case are pristine. Taylor abused drugs, which is criminal conduct in Ohio. This information was known to Kroblin's, Taylor's former employer. With a reasonable amount of care, A–Able Rents could have known of Taylor's criminal propensity. By its own admission, A–Able Rents stated that had it known of Taylor's drug abuse it would not have hired him. In *Byrd v. Faber*, the Supreme Court held the relevant inquiry is, would these facts have prevented the employment relationship. A–Able Rents said it would have.

A–Able Rents should have known of Taylor's drug abuse. Taylor, by his own admission, stated that crack cocaine made him attack Marie Stephens. A–Able Rents should have known of his drug usage. Consequently, a reasonable jury could have found the failure to inquire into Taylor's employment history before hiring is causally connected to and may have proximately caused the attack on Marie Stephens. Taylor was in Marie Stephens's home to perform work for A–Able Rents. Had Taylor not been an employee, this attack would not have happened. Part (a) of the Stephenses' first assignment of error is well taken. However, part (b) is not.

In part (b) of their argument, the Stephenses claim that a failure to drug test is negligence *per se*. Negligence *per se* would be applicable if Taylor had been involved in an automobile accident. Thus, we decline to take the position that it is negligence *per se* if no drug test is required by the employer in facts of this nature. Other methods are reasonably available to enhance the employer's knowledge of the criminal or tortious propensities of its prospective employee. Although drug testing is an option, it is not negligence *per se* if it is not used.

"Where a legislative enactment imposes a specific duty upon a person for the safety and protection of others, the failure to observe that duty is negligence *per se*." *E.g., Jaworowski v. Med. Radiation Consultants* (1991), 71 Ohio App.3d 320, 329, 594 N.E.2d 9, 15.

" 'Where there exists a *legislative enactment* commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence *per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case.*' " (Emphasis added.) *Id.,* quoting *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph three of syllabus.

Under *Eisenhuth,* violation of a regulation could not constitute negligence *per se,* because regulations are not legislative enactments. *Id.* at 329–330, 594

N.E.2d at 15–16. It is generally accepted that regulations are, however, admissible in evidence as bearing on the question of the lack of ordinary care. See *Zimmerman v. St. Peter's Catholic Church* (1993), 87 Ohio App.3d 752, 757, 622 N.E.2d 1184, 1187–1188.

▉ Nonetheless, in *Zimmerman,* the court held that the violation of an administrative regulation constitutes negligence *per se* if the regulation provides a specific and detailed requirement, and does not require the intervention of human judgment and decision-making in order to comply with it. *Id.* at 761–762, 622 N.E.2d at 1190–1191. Generally, regulations requiring expert testimony to prove a violation are too general to form the basis of negligence *per se.* *Id.* at 762, 622 N.E.2d at 1190–1191.

Ohio Adm.Code Chapter 4901:2–5 establishes safety rules and regulations for motor carriers and shippers of hazardous waste. The regulatory scheme provides for pre-employment drug testing of motor carrier drivers who drive for a "motor transportation company" as defined by R.C. 4921.02. In the case *sub judice,* an expert was required to determine whether the regulations were even applicable to A–Able Rents.

▉ Furthermore, "[b]efore the doctrine of negligence *per se* applies, one must find that the ordinance prescribes a specific act intending to benefit a person claiming under it." *Beaver v. Zussman & Son Co.* (1988), 47 Ohio App.3d 69, 71, 546 N.E.2d 1359, 1361. See, also, *State ex rel. Goodyear Tire & Rubber Co. v. Tracey* (1990), 66 Ohio App.3d 71, 75–76, 583 N.E.2d 426, 428–429. Under Ohio Adm.Code Chapter 4901:2–5, the duty to drug-test drivers was imposed for the purpose of providing safer drivers and preventing automobile accidents. See Sections 391.81 and 391.83, Title 49, C.F.R.

Because A–Able Rents' duty to drug test was only for the purposes of traffic safety, felonious assault and attempted rape are well outside the intended duty. Thus, Ohio Adm.Code Chapter 4901:2–5 does not form the basis of negligence *per se* in this case.

▉ The Stephenses argue in their second assignment of error that they were entitled to punitive damages for A–Able's negligent hiring. We agree.

▉ Proof of actual malice is necessary for an award of punitive damages. *E.g., Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174. Actual malice "is (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id.* at syllabus.

In the case *sub judice,* evidence existed showing Richard Owens put forth very little effort to determine whether Taylor was competent for the job of truck driver and could be trusted in A–Able's customers' homes. Owens's failure to properly investigate Taylor's qualifications raises a question of fact as to whether A–Able Rents should have known Taylor was unfit for the job, and thereby had constructive notice of that fact. Owens should have been concerned when he opted to send his employees into the homes of unsuspecting, trusting customers. This court believes the failure to conduct the pre-employment investigation directly contributed to the violence perpetrated on Marie Stephens. Consequently, A–Able Rents showed a conscious disregard for the rights and safety of others.

 In their third assignment of error, the Stephenses argue that Gregory Stanley was negligent as an employee of A–Able Rents, and his negligence was imputable to A–Able Rents under the doctrine of respondeat superior. They reason Stanley had a duty to prevent Taylor from committing an intentional act. We disagree.

"The doctrine of *respondeat superior* is expressed in the Restatement of the Law 2d, Agency (1958) 481, Section 219(1), which states as follows: 'A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.'" *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

In the case *sub judice,* Stanley was the subordinate of Taylor, not his supervisor. As a subordinate, Stanley had no duty to direct the actions of or supervise Taylor. As an employee of A–Able Rents, he had no duty to accompany Taylor into the Stephenses' house when he was directed to stay in the truck. Accordingly, we find as a matter of law Stanley was not negligent as an employee of A–Able Rents.

 In their fourth assignment of error, the Stephenses argue that Taylor's felonious assault and attempted rape were imputed to A–Able Rents under the theory of respondeat superior. They reason employers are vicariously liable for the intentional torts of its employees' action within the scope of their employment. We disagree.

 In order for the doctrine of respondeat superior to apply, the tort of the employee must be committed within the scope of his employment. *Osborne,* 63 Ohio St.3d at 329, 587 N.E.2d at 828–829. "Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.'" *Id.,* quoting *Byrd v. Faber,* 57 Ohio St.3d at 58, 565 N.E.2d at 587. "In general, 'an intentional and willful attack committed by an agent or employee, to vent his

own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefor.' Stated otherwise, 'an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business.' " (Citations omitted.) *Id.*, 63 Ohio St.3d at 329–330, 587 N.E.2d at 829.

The Supreme Court of Ohio recognized that whether an employee is acting within the scope of his employment is a question of fact to be decided by the jury. *Osborne* at 330, 587 N.E.2d at 829. The willful and malicious character of an employee's act does not always, as a matter of law, remove the act from the scope of employment, unless the act is so divergent that its very character severs the employment relationship. *Id.* In *Osborne,* the court concluded that an off-duty police officer, who assaults someone while in the course of securing the scene of an accident, and represents that he is making an arrest, is not only acting within the scope of employment, but is also facilitating or promoting his employer's business. *Id.* at 334, 587 N.E.2d at 832.

The Stephenses argue that this court should adopt the holding of *Osborne* as well as the Supreme Court of California's decision in *Mary M. v. Los Angeles* (1991), 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341, and apply it to this case. In *Mary M.,* an on-duty police officer, who raped a drunk driver in lieu of arresting her, was held to be acting within the scope of his duty. The major premise for the California court's holding and the Supreme Court of Ohio's holding was each officer's use of police authority to facilitate his criminal behavior. See *Osborne,* 63 Ohio St.3d at 332, 587 N.E.2d at 830–831.

The question of fact standards of *Osborne* and *Mary M.* are limited to situations involving police officers who take advantage of their authority and control and abuse their power. The *Osborne* court held that a question of fact arises as to the employer's liability because a police officer's authority to use force is so closely connected to the facilitation or promotion of his employer's business. *Osborne* does not suggest this standard apply to every intentional and willful act of every employee.

Ohio courts have generally held an intentional tort such as a sexual assault or rape, which in no way facilitates or promotes the employers' business, is so far outside the scope of employment that employers should not be held liable for such acts under the doctrine of respondeat superior. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (minister forced women to engage in sexual activity with him during marriage counseling); *Peters v. Ashtabula Metro. Hous. Auth.* (1993), 89 Ohio App.3d 458, 462, 624 N.E.2d 1088, 1091 (employee raped child while working in child's apartment); *Vance v. Consol. Rail Corp.* (Nov. 10, 1993), Cuyahoga App. No. 63806, unreported, at 16–17, 1993 WL 462871 (workplace harassment such as "sexual taunting" was outside scope of employment); *Szydlowski v. Ohio*

*Dept. of Rehab. & Corr.* (1992), 79 Ohio App.3d 303, 306, 607 N.E.2d 103, 105 (psychological aide sexually assaulted female inmates); *Bunce v. Parkside Lodge of Columbus* (1991), 73 Ohio App.3d 253, 256–257, 596 N.E.2d 1106, 1108–1109 (drug rehabilitation counselor sexually assaulted patient). But, see, *Wells v. Bowie* (1993), 87 Ohio App.3d 730, 622 N.E.2d 1170 (hospital liable for sexual assault of patient by nurse where patient made previous complaints about nurse).

In the case *sub judice,* Taylor's attempted rape was clearly outside the scope of his employment, because it did not facilitate or promote A–Able Rents' rental business. The facts of *Osborne* are distinguishable. When Lyles committed the assault, he was clearly in the process of securing the scene of an accident and making an arrest. *Id.,* 63 Ohio St.3d at 334, 587 N.E.2d at 832. Taylor, unlike a police officer, is not required to use force in the furtherance of A–Able Rents' business. This case is also distinguishable from *Wells.* With knowledge of defendant's misconduct, a question of fact arose as to whether the hospital facilitated the assault by failing to act upon reports that defendant was sexually assaulting the plaintiff. *Id.,* 87 Ohio App.3d at 738, 622 N.E.2d at 1175. A–Able Rents, unlike the hospital, was unaware of Taylor's drug abuse, and did nothing to knowingly facilitate the drug use. Because Taylor's unprovoked felonious assault and attempted rape did not promote or facilitate A–Able Rents' business in any way, such acts were clearly outside the scope of Taylor's employment.

Accordingly, summary judgment on the Stephenses' claim of negligent hiring and punitive damages is reversed. On negligence *per se* and respondeat superior as to Stanley and A–Able Rents, the trial court's summary judgment is affirmed.

The judgment is affirmed in part and reversed in part and the cause is remanded.

*Judgment accordingly.*

PATTON, C.J., and SPELLACY, J., concur.