Karen DAWSON, Plaintiff,

v.

**AIRTOUCH CELLULAR, Defendants.**

No. C2–97–1182.

United States District Court,
S.D. Ohio,
Eastern Division.

April 21, 1999.

Christopher King, Columbus, OH, for Karen Dawson.

John Michael Stephen, Kimberly C. Shumate, Porter Wright Morris & Arthur, Columbus, OH, for AirTouch Cellular.

### OPINION & ORDER

MARBLEY, District Judge.

Plaintiff Karen Dawson filed this suit against Defendant AirTouch Cellular, Inc., ("AirTouch") on September 29, 1997 in the Court of Common Pleas of Franklin County, claiming that her supervisor, Ron Tackett, discriminated against her because she is African–American. Dawson brought five causes of action, claiming: (1) violation of 42 U.S.C. § 1981; (2) violation of Ohio Rev.Code § 4112; (3) constructive discharge; (4) intentional infliction of emotional distress; and (5) negligent retention. AirTouch removed the case to federal court on October 29, 1997.

This matter comes before the Court on AirTouch's Motion for Summary Judgment. Dawson has voluntarily dismissed her charges of constructive discharge and emotional distress. The issues for summary judgment are limited to the § 1981, § 4112, and negligent retention claims.

### I.

Dawson was an Account Executive at AirTouch from June 1995 until her resignation in June 1997. As an Account Executive, she was responsible for selling cellular phone service. Ron Tackett, the District Sales Manager, was Dawson's immediate supervisor during her tenure at AirTouch.

During Dawson's employment, AirTouch employed a sales goal system for its agents. All AirTouch Account Executives were required to activate at least thirty

cellular phones per month, and to maintain a rolling three month average of at least ninety activations. Failure to meet these expectations resulted in an Account Executive being placed on "progressive counseling" to improve sales performance. The consequences of being placed on "progressive counseling" are unclear. Dawson has not alleged that any wages, benefits or seniority were lost, or that any other detrimental employment action resulted from progressive counseling.

AirTouch placed Dawson on progressive counseling for failing to meet her sales quota twice during her two years of employment. In June of 1996, Dawson was placed on progressive counseling for failing to meet her quota. After achieving thirty-five activations per month for three months, Dawson was taken off of progressive counseling. In April of 1997, Air-Touch again placed Dawson on progressive counseling because her sales fell below thirty for the month of March.

Dawson claims that three incidents involving Ron Tackett constitute race discrimination. First, in January of 1996, Dawson asked Tackett to charge her cellular phone battery. She claims Tackett responded that he would do so "if it's not stolen." Tackett later insisted this comment was a joke; Dawson maintains it was a racial slur.

Second, Dawson claims that Tackett's handling of progressive counseling for Account Executives was racially biased. This claim stems from Dawson's first progressive counseling, in June of 1996, when another Account Executive "gave" Dawson one of her sales to count toward Dawson's thirty activations goal. Dawson believed that she had already satisfied her quota, and she voluntarily returned the sale to her co-worker. As it turned out, however, Dawson had not met her monthly quota, and was placed on progressive counseling. Later, in January of 1997, Tackett allegedly told Dawson that another (white male) Account Executive was going to fall short of his goal, and that Tackett did not intend to let that employee fail. Dawson had

exceeded her minimum sales for that month and, at Tackett's request, voluntarily gave one of her sales to the other Account Executive. Dawson was disturbed that Tackett had not shown the same level of concern about *her* failure to meet the sales minimum back in June of 1996.

Third, Dawson contends that a verbal exchange with Tackett in March of 1997 exhibited racial animus. After Dawson did not respond to a question Tackett posed to each Account Executive during a sales meeting, Tackett asked Dawson to come to his office and tell him what was wrong. Dawson told him that she was unhappy with how he had handled a phone inquiry she made to him while on a sales call. Tackett responded "so I'm the asshole." Dawson stated that the conversation was finished and walked out of his office. Tackett asked her to stay, but she refused. Tackett followed Dawson, raised his voice, asked if she was going to continue the meeting and suggested that her refusal to do so amounted to insubordination. Dawson reported this incident to upper-management; and, as a result, Tackett called Dawson to apologize, and he apologized again in a meeting with a Regional Sales Manager.

These three incidents constitute the entire basis of Dawson's claims of race discrimination and negligent retention. During her tenure at AirTouch, Dawson never complained of race discrimination. In her official complaints about the above-described incidents, Dawson did not suggest that the incidents were racially motivated or that Tackett made racial comments or discriminated against her based on her race.

Plaintiff continued in her position as an Account Executive until June 2, 1997, when she resigned. She had conducted a job search and obtained employment elsewhere. In her written resignation letter, her conversations regarding her resignation and in her exit interview, Dawson never indicated that Tackett or anyone

else at AirTouch had discriminated against her based upon her race.[1]

Dawson filed this suit on September 29, 1997. AirTouch now moves for summary judgment, claiming that Dawson has not established a *prima facie* case of race discrimination, and that the alleged facts cannot support a claim of "negligent retention."

## II.

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (summary judgment appropriate when the evidence could not lead a trier of fact to find for the non-moving party).

In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find for the non-moving party. *See Anderson,* 477 U.S. at 251, 106 S.Ct. 2505; *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995).

## III.

### A. Race Discrimination under 42 U.S.C. § 1981 and Ohio Rev.Code § 4112[2]

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the criteria a plaintiff alleging sex discrimination must demonstrate to establish a *prima facie* case under Title VII. Such plaintiff must show, as a threshold matter, that (1) she is within a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) comparable, non-protected persons were treated better than the plaintiff. *See id.* at 802, 93 S.Ct. 1817. The proof standards enunciated in *McDonnell* apply to race discrimination claims

---

1. In her Memorandum Contra, Dawson describes the employment complaints of her co-employees, Pamelia Lester and LaMel Molson, in great detail. Dawson claims that Lester and Molson's grievances are evidence of Ron Tackett's general bad attitude toward black women. These claims are not relevant to Dawson's case. First, these women's stories, while possibly illustrative of poor management, do not provide any evidence of *racial* discrimination. Second, they are irrelevant to the crucial issue here: whether Dawson has demonstrated a *prima*

facie case, and, specifically, whether Dawson suffered any adverse employment action.

2. While it is unclear from the face of Dawson's Complaint whether she is alleging hostile environment or discrimination in a term or condition of employment, she explicitly states in her Memorandum Contra that she is alleging *only* disparate treatment race discrimination. Plaintiff's Memorandum Contra Defendant's Motion for Summary Judgment, p. 1, n. 1.

alleged under 42 U.S.C. § 1981, *see Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1094 (6th Cir.1996), as well as under Ohio Rev.Code § 4112. *See Little Forest Medical Center v. Ohio Civil Rights Commission,* 61 Ohio St.3d 607, 609, 575 N.E.2d 1164 (1991), *cert. denied,* 503 U.S. 906, 112 S.Ct. 1263, 117 L.Ed.2d 491 (1992). While additional burden-shifting will ensue *if* a plaintiff can prove a *prima facie* case, *see Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), AirTouch's present Motion for Summary Judgment is predicated upon Dawson's ability to establish a *prima facie* case, alone.

■ AirTouch argues that summary judgment is appropriate because Dawson has failed to satisfy the third prong of the *McDonnell Douglas* test. Taking all of Dawson's allegations as true, AirTouch claims that Tackett and AirTouch's actions did not constitute adverse employment action. The Court agrees.

The Sixth Circuit articulated its definition of adverse employment action in *Kocsis v. Multi–Care Mgmt.,* 97 F.3d 876 (6th Cir.1996). In that case, Linda Kocsis, a nurse who had multiple sclerosis, was transferred from her position as nursing supervisor to the position of "unit RN." She claimed that this transfer was an adverse employment action. The Sixth Circuit held otherwise, concluding:

> Kocsis has not suffered a materially adverse employment action. In her new job as unit RN, she enjoyed the same (or a greater) rate of pay and benefits, and her duties were not materially modified. She submitted no evidence that she lost any prestige in her position because of her working condition or her title change.

*Id.* at 886–87. In reaching this conclusion, the *Kocsis* Court articulated how adverse employment actions should be analyzed. First, the Sixth Circuit required that plaintiffs "demonstrate as part of a *prima facie* case a showing of materially adverse conditions imposed by the employer." *Id.* at 887. Second, the Court discussed what is

*not* considered materially adverse conditions. Reassignments without salary or work hour changes do not constitute adverse employment decision in employment discrimination claims. *See id.* at 885; *see also Yates v. Avco Corp.,* 819 F.2d 630, 638 (6th Cir.1987). The public's perception of the job does not comprise a term or condition of employment. *See Kocsis,* 97 F.3d at 885–86. Neither is a semantic change in title and a "bruised ego" enough to sustain a claim of discrimination, where pay and benefits remain the same. *See id.* (*citing Flaherty v. Gas Research Institute,* 31 F.3d 451, 456 (7th Cir.1994)).

Finally, relying upon the rule in the Seventh Circuit, the *Kocsis* Court specified several factors to consider in determining if an employment action was materially adverse: "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." 97 F.3d at 886 (*quoting Crady v. Liberty Nat'l Bank and Trust Co.,* 993 F.2d 132, 136 (7th Cir.1993)); *accord Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir.1994) ("changes in . . . working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse condition required."); *Joiner v. Ohio Dep't of Transp.,* 949 F.Supp. 562 (S.D.Ohio 1996) (granting summary judgment for failure to show adverse employment action, when plaintiff did not allege any material change in his working conditions).

Applying this standard to the facts at issue, it is clear that Dawson has not even *alleged,* much less presented evidence demonstrating any of the factors discussed in *Kocsis.* The two incidents where Tackett stated "so I'm the asshole," and asked if the cellular battery was stolen certainly do not sound amiable, and the latter may even have racist overtones, but as isolated incidents which did not materially alter Dawson's working conditions, they are not cognizable as adverse employment actions.

The two comments, moreover, do not meet any of the criteria enunciated in *Kocsis*. Tackett's comments did not lead to Dawson's demotion or termination. Dawson has not alleged that she lost any salary, seniority or benefits, or received a less distinguished title or fewer responsibilities as a result of Tackett's remarks. A recurring point in Supreme Court employment discrimination jurisprudence is that "simple teasing, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (internal quotations omitted); *see also Torres v. County of Oakland*, 758 F.2d 147, 152 (6th Cir.1985). Two offhand comments by a supervisor, which, while distasteful, were neither threatening nor overtly racially charged, and which did not alter any condition of employment, cannot support a claim of disparate treatment.[3]

Stronger evidence of a materially adverse employment action are Dawson's allegations that she was twice put on "progressive counseling" for failing to meet the thirty activations per month quota. Dawson's does not anywhere claim, however, that progressive counseling is an adverse employment action. There is nothing in the record to suggest that such corporate policy results in lower pay, or reduced benefits, responsibilities or title. In fact, Dawson's counsel conceded at Oral Argument that all of these factors remain constant before, during and after the counseling period. Dawson simply has not

demonstrated, or even alleged that her two progressive counselings should be classified as adverse employment actions. Failure to allege an adverse employment action is a fatal flaw in Plaintiff's case. Summary judgment is appropriate in employment discrimination cases where the employee suffered no adverse job consequences as a result of alleged harassment. *See Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998); *Faragher*, 118 S.Ct at 2293. Having failed to establish a *prima facie* case, Dawson's claims of race discrimination must be **DISMISSED.**

### B. Negligent Retention

■ Dawson's only remaining claim is for negligent retention of Ron Tackett.[4] Dawson charges that AirTouch was negligent in not terminating the employment of Ron Tackett, whom she characterizes as a "horribly dangerous" supervisor. Dawson claims that evaluations of Tackett noted that he needed "more self-awareness and humility" that his "people knowledge skills were weak" and that he had an "authoritative style." Dawson's negligent retention claim is unpersuasive.

■ As a federal court exercising supplemental jurisdiction over this state law tort claim, the Court shall apply the law of the state of Ohio. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Solly v. Manville Corp. Asbestos Disease Fund*, 966 F.2d 1454, 1992 WL 125386 (6th Cir.), *cert. denied*, 506 U.S. 954, 113 S.Ct. 411, 121 L.Ed.2d 335 (1992).[5] Ohio cases which

---

**3.** Given the nature of Dawson's factual allegations, a hostile work environment claim would have seemed more appropriate. However, Dawson has explicitly stated that she is not, and never has been, pursuing a hostile environment claim. *See* Plaintiff's Memorandum Contra, p. 1, n. 1.

**4.** While Dawson has labeled this cause of action "negligent retention," Ohio courts use the term "negligent hiring." The Court conducted a Westlaw search with the key phrase "negligent retention" in the Ohio database. Only one case, *Myers v. Goodwill Industries*, 1998 WL 887447 (Ohio App. 9 Dist.1998), an

unpublished decision, has ever used that phrase. Dawson relies exclusively upon this unpublished opinion in supporting her claim.

**5.** Ohio Supreme Court holdings are best, but if the Supreme Court of Ohio has not spoken, this Court "must ascertain from all available data what the state law is and apply it." *Greyhound Food Management v. City of Dayton*, 852 F.2d 866, 868 (6th Cir.1988) (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir.1985)). "Available data" includes applicable dicta from the Supreme Court of Ohio, findings of Ohio appellate courts, re-

address the issue of negligent hiring and retention look to foreseeability as the test of employer liability. *See, e.g., Evans v. Ohio State University,* 112 Ohio App.3d 724, 680 N.E.2d 161 (1996) ("it is only where the misconduct was to be anticipated, and taking the risk of it was unreasonable, that liability will be imposed."). Moreover, Ohio courts considering negligent hiring / retention issues have consistently faced factual scenarios far more extreme than this case.

In *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991), the Ohio Supreme Court held that a religious institution may not be held liable for negligent hiring absent allegations that the "individual hired had a past history of criminal, tortious, or otherwise dangerous conduct about which the religious institution knew or could have discovered through reasonable investigation." *Id.* at 61, 565 N.E.2d 584. In *Byrd,* a pastor who was providing marriage counseling to a married couple in his congregation allegedly forced the wife to engage in sexual activity with him. The Ohio Supreme Court held that the church could not be held liable for negligently hiring the pastor because the plaintiffs had not alleged any facts indicating that the church did know or should have known that the pastor had a criminal or tortious history. Without such notice, the *Byrd* court reasoned, the church had no way of foreseeing that the pastor would act wrongfully.

Ohio's lower courts have interpreted *Byrd* as applying to *all* cases of negligent hiring. In *Stephens v. A–Able Rents, Co.,* 101 Ohio App.3d 20, 654 N.E.2d 1315 (1995), the Ohio Court of Appeals adopted *Byrd*'s formulation as the standard for negligent hiring in *all* cases, stating, "[t]he primary issue in a negligent hiring case is whether the employer knew of should have known of the employee's criminal or tortious propensities." *Id.* at 25, 654 N.E.2d 1315. Further, *Stephens* stands for the proposition that:

> the plaintiff must focus the inquiry on the employer and not on what the em-

ployee did. If the plaintiff shows facts indicating the employee had a past history of criminal or tortious conduct about which the employer knew or should have known, summary judgment is improper and a question of fact is raised.... The relevant inquiry is whether facts existed that the employer should have known about, which facts would have prevented the employment relationship.

*Id.* at 26, 654 N.E.2d 1315. The *Stephens* court held that summary judgment was not proper in a case where an employee of a moving company raped a woman in her house while he was on the job, moving the furniture in her home. The company had hired the man without conducting a background check, despite several "red flags" on his employment application. The employee had a violent criminal record and a long history of drug abuse. Other Ohio cases dealing with negligent hiring have dealt with similarly extreme facts. *See, e.g., Peters v. Ashtabula Metropolitan Housing Authority,* 89 Ohio App.3d 458, 624 N.E.2d 1088 (1993) (summary judgment appropriate where employee raped minor child while working in child's apartment building when "no facts were offered which would give rise to a duty to conduct a criminal background check").

In her only attempt to provide this Court with legal authority on this issue, Dawson states in her Memorandum Contra that *"Myers* (and common sense) specifically nullifies Defendant's argument that Tackett had to exhibit some sort of criminal past in order that Plaintiff be able to pursue her negligent retention claims to trial." Plaintiff's Memorandum Contra, p. 7, n. 12. Presumably, Dawson is referring to the unpublished decision of *Myers v. Goodwill Industries,* 1998 WL 887447 (Ohio App. 9 Dist.1998). If this is the case, Dawson is simply wrong. *Myers* specifically incorporated the "criminal or tortious behavior" standard in its opinion. *See id.* at *3. Notice and foreseeability to the employer are still the issue in *Myers,*

statements of law, law review commentaries,

and the majority rule among other states. *Id.*

and the holding—*affirming* a grant of summary judgment on the plaintiff's negligent retention claim—does not provide any support for Dawson's case.

The Ohio cases construing negligent hiring are distinguishable from this case. First, Dawson has not alleged that Tackett has any criminal or tortious propensities. This is a necessary prerequisite for a negligent hiring / retention claim and Dawson's failure to do so, alone, is a proper basis for granting summary judgment on this issue. Second, Dawson's factual claims do not rise to the level of those anticipated by negligent hiring jurisprudence. Her two verbal sparring matches with Tackett are hardly the type of harm for which an employee might recover against an employer who negligently hires or "retains" a miscreant employee. While Tackett has been described as an unpleasant and often unprofessional supervisor, Dawson has provided nothing to support her accusation that he was a "horribly dangerous" manager. Therefore, Dawson's claim of negligent retention is **DISMISSED.**

## IV.

This case must be dismissed in its entirety. Dawson has alleged nothing which would support the necessary showing of an "adverse employment action," and has therefore failed to make a *prima facie* case of race discrimination. And her claim of negligent retention is entirely without merit as such cause of action is available only when a company hires or retains an employee with criminal or tortious propensities, and Dawson has not alleged Tackett has a criminal or tortious background. For the foregoing reasons, AirTouch's Motion for Summary Judgment is **GRANTED,** Dawson's Motion for Reconsideration of the Interim Order is **DENIED,** and this case is **DISMISSED.**

**IT IS SO ORDERED.**