COSTIN et al., Appellants,

v.

CONSOLIDATED CERAMIC PRODUCTS, INC., Appellee.

[Cite as *Costin v. Consol. Ceramic Products, Inc.*, 151 Ohio App.3d 506, 2003-Ohio-437.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 81611.

Decided Jan. 30, 2003.

Lowe, Eklund, Wakefield & Mulvihill and Mark L. Wakefield, for appellants.

Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Carolyn M. Cappel and Andrew Stienecker, for appellee.

ANNE L. KILBANE, Judge.

{¶ 1} This is an appeal from an order of Judge Peggy Foley Jones that granted summary judgment to appellee Consolidated Ceramic Products, Inc. ("CCPI") on the intentional tort claims, under *Blankenship v. Cincinnati Milacron Chemicals, Inc.*[1] of appellants Brian and Kimberly Costin. Costin claims that it was error to find that CCPI was not responsible for the unsafe practice that he learned from other employees and that ultimately led to his injury. We reverse and remand.

{¶ 2} From the record we glean the following: On February 27, 2001, Costin was working for CCPI as a service technician at the LTV Steel plant in Cleveland. He monitored a programmable robotic apparatus that sprayed a heat-resistant coating on tundishes, which are receptacles for holding molten metal before it is placed in molds. The apparatus runs on a track, and Costin was to ensure that the spray was applied evenly and at the proper thickness. On the morning in question the spray was not adhering to the tundish, but was sliding down its walls, so Costin entered the "work envelope," defined as the area where the robot operates, to trowel the spray material back up the walls. While he was so engaged, the robot passed and trapped his ankle and leg between the track and the apparatus and continued to move down the track over his leg and hip. He sustained fractures of his hip and both bones of a lower leg. The leg, although surgically repaired using plates and pins, has never fully healed.

{¶ 3} The Costins filed suit alleging that CCPI was liable for an intentional tort because he was required to be in the work envelope while the robot was moving despite the substantial certainty that injury would result. After discovery CCPI moved for summary judgment, and the parties' arguments focused on the deposition transcripts of four witnesses: (1) Costin; (2) Michael Gasaway, who was involved in designing the robotic spray system at the LTV facility; (3)

---

1. (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572.

Randy Griffith, who was Costin's immediate supervisor; and (4) Greg Lazzari, who was Griffith's immediate supervisor.

{¶ 4} Costin testified that the "light curtains," which are light sensors that automatically stop the robot if anyone enters the work envelope, had been disabled because they were malfunctioning, and he also stated that they had never been operational during the month he worked at the LTV facility. Although Costin had been employed by CCPI since February 1999, he worked at a different facility before being transferred to LTV. He stated that he learned to operate the robot by watching Griffith and other employees do it, and that he entered the work envelope while the robot was running because they had done so. He claimed that he had been told that the fallen spray had to be troweled back up the sides before the robot finished its cycle, apparently because it was necessary to have the robot spray over the troweled material again, although it was somewhat unclear whether this was for only cosmetic purposes or for other, more substantive reasons.

{¶ 5} Gasaway testified that it was CCPI policy that no technician was to enter the work envelope while the robot was running, and produced CCPI memos to that effect. The memos, however, were dated prior to Costin's employment and there was no evidence that he had ever been notified of the policy. Although the memo dated July 7, 1998, instructed technicians to sign and date it to show receipt, CCPI did not present a copy of the memo bearing Costin's signature. His file, however, did contain various other documents bearing his signature, such as a hazardous material training record, acknowledgment of receipt of CCPI's drug and alcohol policy, and a memo dated November 13, 1998, also prior to the date Costin began employment, which concerned his truck license certification.

{¶ 6} A memo dated June 22, 1998, also concerned the use of light curtains, and stated:

{¶ 7} "These devices MUST be operational and used. If there are any problems with this, back-up steps should be taken to ensure the safety of everyone involved." (Capitalization sic.)

{¶ 8} The July 7, 1998 memo sent for the technicians' signatures contained the same language, except that it was altered to state only that the light curtains "should be operational and used." Gasaway testified that he believed that the work envelope was sufficiently guarded even without the light curtains because the word "STOP" was painted on the floor around it and warning signs directed people not to enter the area. Gasaway did not testify, however, that these signs were the "back-up steps" referred to in the safety memos, as they were part of the original safety scheme included with the light curtains.

{¶ 9} Griffith stated that he was aware that the light curtains were not working at the time of the injury, and stated that he told Costin that he could

continue work but instructed him "to be careful." He denied that he would have instructed or allowed a technician to enter the work envelope for any reason while the robot was running, stating that such conduct was against CCPI policy. Lazzari, however, testified that Griffith often disabled the light curtains because they would react to oversprayed material and stop the robot unnecessarily. He also stated that it was "normal procedure" for technicians to trowel up fallen spray material while the robot was running, and stated that "Randy Griffith has done it, he showed the guys how to do it, pull the material up and then for cosmetic reasons so the mill wouldn't see it, they would reflash the tundish with a spray mist." He also stated, however, that the work Costin was performing could have been done while the robot was stopped, and CCPI argued that Costin should have used the company's lockout/tagout procedure to stop the robot and prevent anyone from restarting it while he was in the work envelope. The judge granted CCPI's motion for summary judgment, stating:

{¶ 10} "[T]here is no evidence that defendant specifically told Plaintiff to enter the work envelope while the robot was running. The evidence reveals that Plaintiff chose to enter this area despite his training not to do so. The procedure Plaintiff chose was learned from other employees and clearly not a directive from Defendant."

{¶ 11} Costin states a single assignment of error, arguing that the judge erroneously found that he was not required to enter the work envelope while the robot was running and, therefore, could not satisfy the third element of an employer intentional tort set forth in *Fyffe v. Jeno's, Inc.*[2] In order to prove an employer intentional tort, the plaintiff must show that the employer knew of the danger present in the workplace, knew that exposure to the danger meant that harm to an employee was a "substantial certainty," and acted to require the employee to continue to perform the task despite the danger and substantial certainty of harm.[3] We review a grant of summary judgment de novo, using the same standard as the trial judge, which requires that we consider the evidence in the light most favorable to the nonmoving party to determine whether a material dispute of fact exists.[4]

{¶ 12} We disagree with the judge's findings that Costin was trained not to enter the work envelope while the robot was running and that the procedure was "clearly not a directive" from CCPI. The evidence taken in the light most favorable to Costin shows a genuine issue for trial concerning whether CCPI,

---

2. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus.

3. Id.

4. Civ.R. 56(C); *Stephens v. A–Able Rents Co.* (1995), 101 Ohio App.3d 20, 26, 654 N.E.2d 1315.

with knowledge of the danger, "did act to require the employee to continue to perform the dangerous task."[5] There is no dispute that the light curtains were not operating at the time of Costin's injury, and he, Griffith, and Lazzari all testified that the light curtains had been malfunctioning and were out of operation for a significant period of time prior to the accident. Despite memos stressing the need for the light curtains to be operational at all times or at least for adequate "back-up steps" if the robot was operating without them, Costin was allowed to operate the robot with no additional safety steps other than the instruction "to be careful."

{¶ 13} Contrary to the judge's finding, there is considerable dispute on the critical issue of whether CCPI acted to require Costin to enter the work envelope while the robot was running. Costin testified that he learned the method of troweling up fallen spray material from other CCPI employees working at the LTV facility, and Lazzari testified that this activity was "normal procedure," and that Griffith had trained employees in this procedure and had used it himself.

{¶ 14} Although CCPI claims that the light curtains were designed solely to protect passersby in the facility from accidental injury if they breached the work envelope, the evidence indicates that the curtains also were designed to stop the robot while a technician performed tasks such as troweling up fallen spray material. The witnesses, including Gasaway, suggested that when the light curtains were operational a technician could reach into the work envelope, stopping the robot momentarily, and after completing his work he could then press a reset button and the robot would resume its cycle at the same point it was stopped. The record does not reveal whether other methods of stopping the robot, such as the lockout/tagout procedure or simply waiting until the pro-grammed cycle ended, would have been practical or effective alternatives to operational light curtains. In any event, the evidence taken in Costin's favor indicates that it was normal to breach the work envelope to trowel up spray material, that the light curtains prevented injury by ensuring that the robot stopped when this task was performed, and that CCPI employed no alternative safety measures when the light curtains were not operating.

{¶ 15} Although CCPI claims that Costin was instructed never to enter the work envelope while the robot was running, the evidence shows that he was asked to perform his tasks without being instructed on an alternative means of stopping the robot. He was told only "to be careful" when operating the robot without the light curtains. He was never instructed to use the lockout/tagout procedure for this purpose, and this procedure normally was used only when the technician was performing maintenance on the robot itself, not when he was performing tasks during the robot's spray cycle. On the evidence presented a jury could conclude

---

5. *Fyffe*, supra.

that, when the light curtains were not operational, CCPI deliberately intended its employees to enter the work envelope while the robot was running rather than employ the lockout/tagout procedure or any other method of stopping the robot. It took no steps to adopt such procedures even though it knew (1) that its light curtains frequently malfunctioned and were disabled and (2) that entering the work envelope to trowel up spray material was normal procedure. Therefore, a jury reasonably could find that CCPI failed to instruct its employees not to use the robot when its light curtains were not operational, required them to use the robot without the safety device and without providing an alternative safety procedure and, therefore, required or expected them to trowel up spray material while the robot was running.

{¶ 16} CCPI submits that it did not require Costin to do the dangerous task because its policies forbade such activity and no one specifically instructed him to trowel up spray material while the robot was running. Such evidence, however, is not required to defeat summary judgment because a jury question is created if there is sufficient evidence "that the employer merely expected the employee to engage in a dangerous task."[6] Moreover, an employer is responsible for acts of its employees that are "calculated to facilitate or promote" the employer's business.[7]

{¶ 17} CCPI also argues that Costin cannot show that it knew his injury was substantially certain to occur and that the judgment should be affirmed on this basis even if we reject the judge's stated reasons.[8] A reasonable jury, however, also could find evidence to sustain this element because CCPI was aware of the danger presented by the robot, the fact that the light curtains frequently malfunctioned or were disabled, and that employees entered the work envelope to do tasks during the robot's cycle. A jury could find that, even if no prior injuries had occurred, CCPI knew that it was only a matter of time before someone was injured by a moving robot. Therefore, we reject the alternative argument as well. Costin's assignment of error is sustained.

{¶ 18} The judgment is reversed and the cause is remanded.

Judgment accordingly.

FRANK D. CELEBREZZE JR., J., concurs.

MICHAEL J. CORRIGAN, P.J., concurs in judgment only.

---

6. *Gibson v. Drainage Prods., Inc.* (2002), 95 Ohio St.3d 171, 2002-Ohio-2008, 766 N.E.2d 982, at ¶ 24, citing *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 487, 696 N.E.2d 1044.

7. *Stephens*, 101 Ohio App.3d at 29, 654 N.E.2d 1315.

8. *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306.