DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas that granted summary judgment in favor of appellee The Andersons, Inc. For the following reasons, the judgment of the trial court is affirmed.
 {¶ 2} Appellants Keith E. Nielsen, et al. set forth a single assignment of error:
 {¶ 3} "Where The Andersons has no immunity under the Workers Compensation Act and where material facts remain as to whether The Andersons committed a workplace intentional tort, the trial court erred in granting The Andersons' motion for summary judgment."
 {¶ 4} In June 2002, appellant Keith Nielsen ("Nielsen") was hired by Renhill Staffing Services, Inc. In August 2002, Renhill assigned Nielsen to work at The Andersons' railcar shop. The Andersons supervised Nielsen, assigned his tasks and compensated Renhill for his services. Nielsen submitted his hours worked to Renhill, who paid his wages and workers' compensation benefits.
 {¶ 5} Nielsen was assigned to use a sandblaster to remove paint and rust from railcars. That is accomplished when sand is released from a hose through a nozzle; the nozzle has a trigger that, when squeezed, releases a high-pressure jet of sand. The nozzle is designed with a button on the side which must be depressed before the trigger can be squeezed. The button functions as a safety mechanism; when the operator lets go of the trigger, the button releases and the equipment turns off.
 {¶ 6} The record reflects that two days before the incident in question, one of Nielsen's co-workers, Charles Stimmage, saw that Nielsen and another worker were using the high-pressure hoses with rubber bands wrapped around the handles to hold the triggers part of the way down. This made it easier to squeeze the trigger and less tiring on their hands. Stimmage told the men to remove the rubber bands. He did not tell any other Andersons personnel of the incident. On December 10, 2002, Nielsen told Stimmage he had shot himself with the high-pressure hose but was not injured. Stimmage informed the blast shop foreman of the accident but did not mention Nielsen's use of rubber bands to squeeze the trigger.
 {¶ 7} On December 11, 2002, Nielsen was injured while using the sandblaster. While Nielsen was holding the hose, he slipped and fell; sandblast grit from the hose shredded ligaments and tendons in his wrist and foot. He had again wrapped several rubber bands around the trigger. After the accident, Nielsen filed an action against appellee The Andersons asserting claims of negligence, intentional tort, malice, negligence per se in violating R.C. 4101.11, and loss of consortium.[1]
 {¶ 8} On February 4, 2005, appellee filed a motion for summary judgment, which the trial court granted on January 27, 2006. In so doing, the trial court held that: (1) appellee was entitled to immunity from appellants' claims of negligence, malice, violating R.C. 4101.11, and loss of consortium and (2) appellants had not established an intentional tort claim. This timely appeal follows.
 {¶ 9} An appellate court must employ a de novo standard of review of the trial court's summary judgment decision, applying the same standard used by the trial court. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129; Grafton v. OhioEdison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 10} As their sole assignment of error, appellants assert that the trial court erred by granting summary judgment in appellee's favor. Appellants present three arguments in support of this claim.
 {¶ 11} Appellants first assert that the trial court erred by finding that appellee was entitled to immunity for several of the claims.
 {¶ 12} Except in certain specific circumstances, employers who are in compliance with the workers' compensation statutes may not be held liable for an employee's injuries suffered in the course of, or arising out of, the worker's employment. R.C.4123.74. Appellants herein claim that appellee has provided no evidence that it contributed directly or indirectly to the workers' compensation fund on Nielsen's behalf and thereby failed to establish its immunity.
 {¶ 13} "Where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer. (Section 35 of Article II of the Constitution and Section 4123.74 Revised Code, applied.)" Daniels v. MacGregor Co. (1965), 2 Ohio St.2d 89, syllabus.
 {¶ 14} Based on Daniels and the facts of this case, it is clear that appellant was an employee of appellee The Andersons. Further, pursuant to Carr v. Central Printing Co. (June 13, 1997), 2d Dist. No. 16091, once this employment relationship is established, "* * * R.C. 4123.74 requires compliance with R.C.4123.35, which specifically requires that an employer shall make premium payments into the workers' compensation fund on behalf of its employees. And without such payments by the customer of the employment agency, either directly or indirectly, such customer cannot claim status as an employer nor the attending immunity provided by R.C. 4123.74. See R.C. 4123.01(B)(2)." (Emphasis added.)
 {¶ 15} In a case factually very similar to the one before us, this court concluded based on Carr, supra, that "* * * for an employer of a temporary employee to obtain immunity from a negligence suit, someone must pay the workers' compensation premiums and some evidence of that must be before the court."Russell v. Interim Personnel, Inc. (1999), 135 Ohio App.3d 301,306. We held in Russell that it is reasonable to infer that someone, most likely the temporary employment agency, paid workers' compensation premiums for the appellant or he would not have obtained benefits from the Bureau of Workers' Compensation. In the case before us, it is clear from the record that appellant received workers' compensation benefits after he was injured. In keeping with our reasoning in Russell, we agree with the trial court that it is reasonable to infer that The Andersons made indirect payments into the workers' compensation fund through its payments to Renhill for Nielsen's services and Renhill's payments into the fund on Nielsen's behalf. As we found in Russell,
absent evidence to the contrary, this satisfies the compliance requirement of R.C. 4123.74 and 4123.35 and entitles appellee to immunity from negligence suits. Accordingly, appellants' first argument is without merit.
 {¶ 16} Appellants next assert the trial court erred by denying their motion to strike documents they claim were unauthenticated. Specifically, appellants refer to two items appellee submitted in support of summary judgment. In response to the disputed documents, appellants filed a motion to strike. The trial court did not rule on the motion, which appellants properly construe as a tacit denial. See Temple v. Fence One, Inc., 8th Dist. App. No. 85703, 2005-Ohio-6628, ¶ 27, citing Georgeoff v.O'Brien (1995), 105 Ohio App.3d 373, 378.
 {¶ 17} In dispute is a copy of a letter to The Andersons notifying the company that Nielsen had filed an "Application for Additional Award for Violation of Specific Safety Requirement in a Workers' Compensation Claim" with the Industrial Commission of Ohio. A copy of the application was attached to the letter. Appellants argue that the items were not admissible evidence because they were not authenticated by way of affidavit or deposition testimony pursuant to Civ.R. 56(E) or self-authenticating evidence pursuant to Evid.R. 902(4).
 {¶ 18} It was within the trial court's discretion to consider any improperly-brought documents in its determination of appellee's motion for summary judgment. See Dunigan v. StateFarm Mut. Auto Ins. Co., 9th Dist. No. 03CA008283,2003-Ohio-6454. In any event, the trial court's judgment entry makes no mention of the application or letter, suggesting that the court did not consider them. Accordingly, we find this argument to be without merit.
 {¶ 19} Finally, appellants assert the trial court erred in granting summary judgment because an issue of fact remains as to whether The Andersons required Nielsen to use an unsafe method of sandblasting by operating the sandblaster with rubber bands wrapped around the trigger. For the following reasons, we find this argument to be without merit.
 {¶ 20} Pursuant to the Supreme Court of Ohio in Fyffe v.Jeno's Inc. (1991), 59 Ohio St.3d 115, to establish an intentional tort by an employer, an employee must prove all of the following: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and (3) that the employer under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. The trial court in this case found that the third prong of the Fyffe test clearly was not satisfied and concluded that it therefore did not need to address the first two requirements. We agree.
 {¶ 21} Appellants argue that to overcome a motion for summary judgment they only need to show that The Andersons "merely expected the employee to engage in a dangerous task." Costin v.Consolidated Ceramic Products, Inc. (2003), 151 Ohio App.3d 506,511. They further cite Hannah v. Dayton Power Light Co.
(1998), 82 Ohio St.3d 382, 387, in which the Supreme Court of Ohio stated that the party opposing summary judgment can satisfy the third element of Fyffe "* * * by presenting evidence that raises an inference that the employer, through its actions and policies, required the [injured party] to engage in that dangerous task."
 {¶ 22} Appellants assert that The Andersons expected Nielsen to operate the sandblaster in an unsafe manner. In support, they imply that the workers had to hold the trigger for eight hours without respite. They further imply that in order to relieve hand fatigue, Nielsen had no choice but to wrap rubber bands around the trigger. In support of summary judgment, appellee had submitted the affidavit of Tab Brown, a crew leader in The Andersons' railcar shop at the time of Nielsen's employment. Brown explained that the workers sandblasting the railcars take a 15-minute break between the start of their shift and lunch, stop for a one-half hour to 45-minute lunch break (depending on the overall length of their shift), and work another one and one-half to two hours until the end of the shift when it is time to clean up. Brown further stated that when his hand gets tired, he switches the equipment to the other hand or changes the position of his hand on the hose. He also stated that workers are permitted to take a break to go to the bathroom or get a drink.
 {¶ 23} Charles Stimmage submitted an affidavit in which he stated that on December 9, 2002, he went into the "pot room" to shut off the sandblast pots. Nielsen and another employee were sandblasting that morning. When Stimmage plugged the hoses back in, they started blasting by themselves because the triggers on the nozzles were held down by rubber bands. Stimmage stated he unplugged the hoses and told Nielsen and the other worker to "take the rubber bands off the trigger before someone gets hurt." He further stated, "I had told Keith Neilsen before not to use rubber bands on the nozzle."
 {¶ 24} Appellants also infer that Nielsen should have received "formal training" or a safety course before using the sandblaster. Nielsen testified at deposition that he was shown how to use the sandblasting equipment by Steve Kropaczewski, the supervisor of The Andersons' fabrication shop, which was Nielsen's first assignment. This was confirmed by Kropaczewski's affidavit in which he stated he trained and supervised Nielsen in the use of the sandblast equipment in the summer of 2002. He also stated he explained the safety button on the trigger and discussed the necessary protective clothing, which includes ear plugs, steel-toed shoes, welding gloves and a blasting helmet. Appellee also submitted the affidavit of employee Robert Beaver, who stated he trained Nielsen to use the sandblast equipment in the summer of 2002, and explained to Nielsen the "deadman switch" on the nozzle. He further stated he instructed Nielsen on the use of safety equipment when sandblasting.
 {¶ 25} This court has thoroughly reviewed the record that was before the trial court on appellee's motion for summary judgment. There is no evidence The Andersons required or expected Nielsen to operate a sandblaster with rubber bands wrapped around the nozzle to circumvent the safety mechanism. Additionally, Nielsen received instruction from at least two other employees on the use of the sandblaster and on the appropriate safety equipment. Finally, despite being told not to use the rubber bands Nielsen continued to do so. We therefore find that appellants have not raised an inference that appellee, through its actions and policies, required Nielsen to engage in a dangerous task. They therefore have not established the elements of an intentional tort claim.
 {¶ 26} Based on the foregoing, this court finds that the trial court did not err by granting summary judgment in appellee's favor and, accordingly, appellants' sole assignment of error is not well-taken.
 {¶ 27} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J. Skow, J. Parish, J. concur.
[1] Renhill Staffing Services, Inc. was also named as a defendant but appellants have settled and dismissed their claims against the company. The Andersons, Inc. is therefore the sole appellee.