JOURNAL ENTRY and OPINION.
{¶ 1} Plaintiffs-appellants, Carl and Sherry Schwotzer, appeal the decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Stone Container Corporation ("SCC"). For the reasons stated below, we reverse and remand.
 I. {¶ 2} Carl Schwotzer ("Schwotzer") brought this action alleging an intentional tort stemming from injuries he suffered while at work. On the day of the incident, Schwotzer was employed by SCC as an assistant operator assigned to the feed end of a 38" flexor folder gluer, a corrugated paper box making machine ("machine")[1]. At 1:30 a.m., Schwotzer began working on an order that was to be completed by 5:00 a.m. The corrugated paper stock was warped and eventually jammed the machine, delaying production.[2]
 {¶ 3} Following these delays, Schwotzer suggested to his foreman, Ron Pauly ("Pauly"), that the job be transferred to a larger machine located next to the 38" FFG. It was Schwotzer's belief that the larger machine was better suited to accommodate the warped material. Pauly refused.
 {¶ 4} Schwotzer testified that the machine jammed numerous times prior to his injury.[3] Each time, he used the "lock out" procedure to clear the jam. The safety procedure established by SCC consisted of a spring-loaded red "stop button" located at four places on the machine that required a person to depress the button and restrain it with a metal lever called a toggle.
 {¶ 5} To clear the jam, Schwotzer placed his left hand on an aluminum "kicker" plate for support and used his right hand to clear the jam. Meanwhile, the operator, Mark Latimer ("Latimer"), was working to clear the jam near his position.[4] To clear his jam, Latimer "jogged" the machine, giving power back to the internal mechanism. To jog the machine, Latimer unfastened the swinging toggle on one of the red spring-loaded stop buttons and hit the "jog" button. Latimer was unable to see where Schwotzer was located. As the machine energized, the kicker plate moved forward pushing Schwotzer's left hand into the inverse rollers of the nip point, crushing his hand.
 {¶ 6} Following his injury, Schwotzer filed a complaint in the Cuyahoga County Court of Common Pleas. On October 18, 2002, SCC filed its motion for summary judgment. On November 21, 2002, Schwotzer untimely filed his brief in opposition and SCC argued to the trial court that its motion should be considered unopposed. On January 30, 2003, the trial court granted SCC's motion for summary judgment, without opinion.
 {¶ 7} Schwotzer timely filed this appeal and advances one assignment of error for review.
 II. {¶ 8} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come but to one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Temple v.Wean United, Inc. (1977), 50 Ohio St.2d 317.
 {¶ 9} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317,330. The record on summary judgment must be viewed in the light most favorable to the opposing party. Williams v. First United Church ofChrist (1974), 37 Ohio St.2d 150.
 {¶ 10} In moving for summary judgment, the "moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280. Thereafter, the nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id. A motion for summary judgment forces the plaintiff to produce probative evidence on all essential elements of his case for which he has the burden of production at trial. Celotex Corp. v. Catrett (1987),477 U.S. 317, 330. Plaintiff's evidence must be such that a reasonable jury might return a verdict in his favor. Seredick v. Karnok (1994),99 Ohio App.3d 502. This court reviews the lower court's granting of summary judgment de novo. Ekstrom v. Cuyahoga County Community College,150 Ohio App.3d 169, 2002-Ohio-6228.
 {¶ 11} The elements of an intentional tort have long been established by the Ohio Supreme Court's decision in Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115. To establish an intentional tort, the plaintiff must show: 1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its operation; 2) knowledge by the employer that if the employee is subjected by his employment to such a dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and 3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task. Employers are not entitled to one workplace injury irrespective of the evidence of its knowledge that a machine is dangerous. Cook v. Cleveland Electric Illuminating Co. (April 10, 1995), Cuyahoga App. No. 67264, 102 Ohio App.3d 417. Lastly, the credibility of an affiant is not to be considered when determining the existence of genuine issues of material fact. Turner v. Turner (1993),67 Ohio St.3d 337.
 III. {¶ 12} In his sole assignment of error, Schwotzer argues that:
"The trial court erred in granting summary judgment for appellee whenthere is evidence by affidavit, expert's affidavit, and depositions uponwhich reasonable minds might differ as to whether or not: 1) appelleeknew of the existence of a dangerous process, procedure,instrumentality, or condition within its business operation; 2) appelleeknew that if appellant were subjected by his employment to such dangerousprocess, procedure, instrumentality, or condition then harm to appellantwas a substantial certainty; and 3) appellee under such circumstances,and with such knowledge, acted to require the appellant, its employee, tocontinue to perform a dangerous task."
 {¶ 13} For the reasons stated below, we find merit to this appeal and reverse the decision of the trial court.
 {¶ 14} A. In regards to the first prong of the test, Schwotzer argues that the feed rollers are inherently dangerous and must be guarded, pursuant to the Occupational Safety and Health Administration ("OSHA") and Ohio regulations. It is argued that SCC acknowledged the dangerousness of the machine, and the absence of safety guards, by placing a yellow and black sign on the machine to warn the feed operator not to feed the final sheet by hand. The sign read, "CAUTION KEEP HANDS AWAY FROM FEED ROLLS DO NOT USE HANDS TO FEED LAST SHEET." He contends that this alone presents a genuine issue of material fact as the jury could infer the SCC was on notice of the machine's dangerousness.
 {¶ 15} As mentioned above, the safety procedure established by SCC consisted of a spring-loaded red "stop button" located at four places on the machine that required a person to depress the button and restrain it with a metal lever called a toggle. SCC argues that the lockout system on Schwotzer's control panel cuts the electrical circuit on the machine and renders it unable to be jogged or run from any position on the machine.
 {¶ 16} However, there is a factual question as to whether power is still available to the machine. Schwotzer testified that the only way to actually cut the power was to pull a lever at the main electrical box, which he was never instructed to use. This testimony was supported by SCC maintenance supervisor Jon Lamprect ("Lamprect"), who stated that when the maintenance department worked on the 38" machine, their lockout procedure also included cutting the power at the source so as not to come into contact with live wires. A reasonable juror could find that this step would not be needed if the basic lockout procedure was effective in cutting the power.
 {¶ 17} Schwotzer also contends that such a "stop button" does not constitute an energy isolating device and is, therefore, a code violation. 29 C.F.R. 1910.147(b) reads in relevant part, "* * * push buttons * * * are not energy isolating devices." This is supported by the expert testimony of Dr. Richard Harkness ("Harkness"), who stated that the method used by SCC to "lock out" the machine is not proper because power is still available at the switch.
 {¶ 18} In addition to the question of whether the stop button constituted a proper energy isolating device, there was some concern as to whether SCC failed to properly install a padlock system on the machine. Plant manager Naramore testified that some machines had a padlock locking out device while others did not. The purpose behind such a device was "[t]o make the individual locking the machine out more aware that he had to physically go someplace and get a key to unlock it then no one else could come buy [sic] and take the machine off lock by turning a switch." Both Schwotzer and Michael Cole[5] testified that during safety meetings prior to his injury, management was made aware that the 38" machine would "start up on its own" and that it was suggested that the company look into the lock-box system. We find that a reasonable juror could find that SCC had the requisite knowledge that its machines and procedures were unsafe.
 {¶ 19} There is conflicting testimony as to the lockout procedures used and whether those procedures adequately prevented power from reaching the machine. Such questions are best suited for the trier of fact.
 {¶ 20} B. The second prong of the intentional tort analysis involves whether the employer had knowledge that if the employee is subjected to such dangerous a process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty. We find that there are sufficient facts that a reasonable juror could find that SCC knew that harm was a substantial certainty.
 {¶ 21} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established, and the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Gertz v. Nerone Sons, Inc., Cuyahoga App. No. 80422,2002-Ohio-3782.
 {¶ 22} SCC argues that the testimony presented reveals that such an incident never occurred in the past. Schwotzer himself testified that in two-and-one-half years he never saw the machine move when it was locked out. Further, he testified that he had cleared over one thousand machine jams without injury. While we are aware that such evidence may be compelling, it is not the sole determinative factor. Cook v. ClevelandElec. Illuminating Co. (April 10, 1995), Cuyahoga App. No. 67264,102 Ohio App.3d 417.
 {¶ 23} We find that Schwotzer has presented sufficient evidence to survive summary judgment. Having found that a reasonable juror could have found SCC knew of a dangerous instrumentality, a juror could also find that SCC knew it was only a matter of time before the injury occurred. When the machine was altered, and the vacuum-assist table was put in place, there was no guard in place to prevent a hand from being drawn into the nip point of the power feed rolls. This sentiment was affirmed by Schwotzer's expert, Harkness, who opined that Schwotzer's injury was substantially certain to occur.
 {¶ 24} Also, it is undisputed that the injury occurred when the operator jogged the machine while clearing a jam. A reasonable juror could question how one person can start the machine while another is clearing a jam or why the workers were unable to see or communicate with each other while clearing the jams. These, and other questions, abound from the facts and evidence presented. A juror could find that Schwotzer has satisfied the second prong of the intentional tort test under Fyffe, supra.
 {¶ 25} C. Finally, we are persuaded that a reasonable juror could find that Schwotzer satisfied the third element of the Fyffe test, namely that SCC required him to continue the dangerous task. We have held that an employer's mere expectation that an employee engage in a dangerous task is sufficient to establish a jury question. Costin v. ConsolidatedCeramic Products, Inc. (Jan. 30, 2003), Cuyahoga App. No. 81611,151 Ohio App.3d 506. "Moreover, an employer is responsible for acts of its employees that are `calculated to facilitate or promote' the employer's business." Id.
 {¶ 26} A reasonable juror could find that Schwotzer, when considering the time pressure applied and the concerns expressed about the warped paper stock, established that his safety was compromised. Therefore, Schwotzer presented sufficient evidence regarding the third prong of the Fyffe test.
 IV. {¶ 27} In conclusion, we find that Schwotzer presented sufficient evidence to defeat SCC's motion for summary judgment. Viewing the evidence in favor of Schwotzer, the motion should have been denied as there are genuine issues of material fact that are issues for the jury. Appellant's assignment of error is granted.
Judgment reversed and remanded.
KENNETH A. ROCCO, A.J. and ANN DYKE, J. concur.
[1] The machine was manufactured by S S Corrugated Machinery Company of Brooklyn, New York between 1966 and 1968. It was moved from SCC's Emery Road plant in Cuyahoga County, Ohio, and reassembled in the Jefferson, Ohio plant by Don Mowry, Inc. According to Mowry, Inc., no changes were made when the machine was reassembled. However, the original S S feed table was replaced with a vacuum-assist feed table. The guards that accompanied the feed table were not the same as the vacuum-assist table.
[2] According to deposition testimony, such warping is endemic to the corrugated box manufacturing industry.
[3] When Schwotzer's injury occurred, the machine was jammed in two locations.
[4] The machine is operated by two individuals.
[5] Mr. Cole was employed as a Ward die cut operator. "Ward" is the name of the manufacturer of the die cutter.