OPINION
{¶ 1} Plaintiff-appellant, Alfred J.R. Sellers, was an employee of Tailored Management ("Tailored"), a professional employment organization. Appellant was assigned to work at Liebert Corporation ("Liebert") in the paint shop. Liebert manufactures parts for heating and cooling systems. On June 29, 2000, appellant was injured when a metal flight bar detached and fell on the back of his head. Appellant filed a workers' compensation claim against Tailored. Appellant then filed a complaint against Liebert for negligence and Tailored for breach of contract. Tailored filed a cross-claim against Liebert. Liebert and Tailored filed a motion for summary judgment, which the trial court granted.
 {¶ 2} Appellant filed a notice of appeal, raising the following assignment of error:
THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF LIEBERT CORPORATION (HEREINAFTER LIEBERT).
 {¶ 3} By the assignment of error, appellant contends that the trial court erred in granting summary judgment in favor of Liebert. To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the non-moving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party. Williams v. First United Church of Christ
(1974), 37 Ohio St.2d 150, 151. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 4} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Supreme Court of Ohio stated that the moving party, on the ground that the non-moving party cannot prove its case, has the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the non-moving party's claim. Once the moving party satisfies this initial burden, the non-moving party has a reciprocal burden to set forth specific facts showing there is a genuine issue for trial. The issue presented by a motion for summary judgment is not the weight of the evidence, but whether there is sufficient evidence of the character and quality set forth in Civ.R. 56 to show the existence or non-existence of genuine issues of fact.
 {¶ 5} When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as applied by the trial court. Maustv. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law. Murphy,
supra.
 {¶ 6} Liebert argues that it is entitled to the immunity from common law actions provided to employers by Section 35, ArticleII, of the Ohio Constitution and R.C. 4123.74. R.C. 4123.74
provides, in pertinent part, as follows:
Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.
 {¶ 7} It is undisputed in this case that appellant was an employee of Tailored. However, for purposes of workers' compensation immunity, an employee may have more than one employer. In the syllabus of Daniels v. MacGregor Co. (1965),2 Ohio St.2d 89, the court stated, as follows:
Where an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer andwhere it is understood that that customer is to have the rightto control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; * * * he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer. * * *
(Emphasis added.)
 {¶ 8} The court in Daniels found that the entity which has the right to control the manner or means of performing the work is also the "employer" of the employee regardless of whether that entity paid the premium into the State Insurance Fund from which the compensation is paid. See, also, State ex rel. Newman v.Indus. Comm. (1997), 77 Ohio St.3d 271, 273.
 {¶ 9} In this case, the contract between Tailored and Liebert provided the following pertinent sections:
1.3 For purposes of this Agreement, the following terms shall have the meanings, respectively, as set forth below:
(a) The term "Contract Staffing Services" shall mean those services provided to Client by Tailored and performed by Tailored to accomplish the various results required by Client. In order to perform the services and results required by Client, Tailored will utilize, upon consultation with Client, individuals employed directly by Tailored and assigned to work at Tailored's and/or Client's facilities. The foregoing workforce classification shall not be employees of Client;
* * *
6.1 It is understood and agreed that Tailored is an independent contractor and all individuals assigned by Tailored to Client's [Liebert] workplace are employees of Tailored. Tailored shall be responsible for such administrative matters as payment of all federal, state and local employment taxes, providing workers' compensation coverage, as well as non-obligatory fringe benefits for its employees. * * *
6.2 Tailored retains all rights of supervision and control of Tailored Associates including, but not limited to, the hiring and promotion, discipline and discharge, wages and salary administration, processing of grievances, policing of employee conduct and appearance, and labor relations. * * *
* * *
11(b) The parties acknowledge and agree that all Tailored Associates shall at all times be under the supervision and control of Tailored, and shall not be under the direct control of Client.
 {¶ 10} The contract is clear in that it provides that Tailored retains all rights of supervision and control over Tailored employees. Liebert contends that regardless of the language of the contract, Liebert maintained supervision and control over the day-to-day operations. However, the contract between Tailored and Liebert provides that Tailored retains the right to supervision and control over the employees. The court inDaniels focused on the right to control, which is provided by contract to Tailored.
 {¶ 11} Appellant also argues that Liebert is estopped from asserting it retained the right of supervision and control over Tailored employees because Liebert denied that claim in its answer to Tailored's cross-claim. In its answer, Liebert provided, as follows:
1. Defendant, Liebert Corporation, admits that it owned, operated, managed and controlled the workplace where Plaintiff worked but denied that it supervised and directed all of Plaintiff's specific work tasks.
 {¶ 12} Appellant contends that Liebert admitted it did not supervise or direct any of appellant's specific work tasks. Liebert contends that the response is accurate because while it directed appellant's day-to-day operational tasks, it did not direct his administrative tasks, such as filling in paperwork, since Tailored was responsible for the administrative tasks. Liebert directed the workers as to how to perform tasks and provided the necessary tools, equipment, materials and supplies to perform those duties.
 {¶ 13} The trial court relied upon Newman, supra, Stone v.N. Star Steel Co., 152 Ohio App.3d 29, 2003-Ohio-1223, and Carrv. Central Printing Co. (Oct. 13, 2000), Montgomery App. No. 18281. In Newman, three employees filed applications for a Violation of a Specific Safety Requirement ("VSSR") against their temporary employment agencies, which the Industrial Commission refused to make findings regarding the claims. The employees filed mandamus actions and the Supreme Court of Ohio determined that customer companies of temporary service agencies are employers subject to claims for violations of specific safety requirements. The court relied upon the reasoning in Daniels
and expanded it beyond the exclusivity provision of R.C. 4123.74
to allow coverage under the Act for VSSR claims against the customer-employer. In Newman, there was no discussion of any contracts between the temporary agency and the customer giving the temporary agency the right to control the manner or means of performing the work. In Newman, the customer had such right.
 {¶ 14} In Stone, supra, the plaintiff worked for Mastership, a professional employer organization and was assigned to work at North Star Steel. After an injury, the plaintiff filed a complaint alleging intentional tort, breach of contract and negligence. The court held that the immunity conferred by R.C.4123.74 barred plaintiff's breach-of-contract claims. "One who exercises day-to-day control over the employee is considered as the employer for purposes of workers' compensation." Stone at ¶ 23, citing Foran v. Fisher Foods, Inc. (1985),17 Ohio St.3d 193, 194. "Even when another company supplies the workers and pays for the required workers' compensation insurance, the employer who controls the manner and means of performing the work is considered an employer for purposes of workers' compensation." Id. However, in Stone, the contract between Mastership and North Star stated that Mastership would provide personnel to North Star but North Star would be responsible for general supervision and direction of employees. That contract was the opposite of the one in this case.
 {¶ 15} In Carr, the plaintiff was employed by Cencor, a temporary employment agency and assigned to work at Central Printing. After an injury and receiving workers' compensation benefits, plaintiff sued Cencor and Central Printing for negligence and intentional tort. The Montgomery County Court of Appeals found that Central Printing paid the actual costs of the premiums on behalf of the plaintiff but was not obligated to do so by a written contract but Central Printing was immune as the plaintiff's employer. There seemed to be an agreement between the parties that Central Printing had the right to control the day-to-day operations because the court focused more on whether Central Printing had complied with the Workers' Compensation statutes.
 {¶ 16} Thus, the cases relied upon by the trial court are distinguishable from this case in that none of those cases involved a contract where the employer retained the right to control and supervision of the employee. We find that the trial court erred in granting Liebert's motion for summary judgment. Appellant's assignment of error is well-taken.
 {¶ 17} For the foregoing reasons, appellant's assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed; and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
Petree and Travis, JJ., concur.
Whiteside, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.