[Cite as *Hornyak v. Res. Alloys, L.L.C.*, 2016-Ohio-8489.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104302**

## DARRELL HORNYAK, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## RESERVE ALLOYS, L.L.C., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-829052

**BEFORE:** Kilbane, P.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 29, 2016

**ATTORNEYS FOR APPELLANTS**

William Craig Bashein
Anthony N. Palombo
Bashein & Bashein Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

Andrew M. Wargo
Amelia J. Leonard
Marshall Dennehey Warner
Coleman & Goggin
127 Public Square, Suite 3510
Cleveland, Ohio 44114

MARY EILEEN KILBANE, P.J.:

{¶1} Plaintiffs-appellants, Darrell Hornyak ("Darrell") and Pam Hornyak ("Pam") (collectively referred to as "plaintiffs"), appeal the trial court's decision granting summary judgment in favor of Reserve Alloys, L.L.C. ("Reserve Alloys"), Reserve CA Twinsburg, L.L.C. ("Reserve CA"), Chris Iaconna ("Iaconna"), Tony Zola ("Zola"), Wayne Clemmons ("Clemmons"), Gene Farrell ("Farrell"), and Eric Pyles ("Pyles") (collectively referred to as "defendants"). For the reasons set forth below, we reverse and remand.

{¶2} The instant appeal arises from a personal injury action plaintiffs field against the defendants for injuries Darrell sustained while working at Reserve Alloys in Twinsburg, Ohio.

{¶3} In October 2011, Darrell was unemployed. While at a Halloween party, he learned of a potential job opportunity at Reserve Alloys, an aluminum recycling business. Darrell interviewed with Production Supervisor Iaconna at Reserve Alloys' facility in November 2011. He hired Darrell but then referred Darrell to Alliance Staffing Solutions ("Alliance"), a temporary employment service, regarding employment. Alliance assigned Darrell to work solely at Reserve Alloys, even though he was technically employed by Alliance.

{¶4} There were two mechanized shredders at Reserve Alloys' facility. The smaller machine processed aluminum scraps, which were initially dumped on a shaker

table.[1]   One of Darrell's responsibilities was to pick out the bigger pieces of aluminum that were too large for the machine.   The remaining smaller pieces of aluminum were transported up an inclined conveyor belt to the top of the shredding machine and dumped inside.   The operation manual warned, in several places, to turn off the machine before attempting to clear a jam and to never feed combustible materials, including aluminum, into the machine.   Failure to comply with the warnings could result in fire or explosions resulting in serious injury or death.

{¶5}   The smaller shredder generated aluminum dust during the shredding operations.   Maintenance Supervisor Farrell, during his deposition, acknowledged that aluminum dust can be combustible.   Occasionally, aluminum scraps became tangled and would not pass through the shredder.   These "hairballs" had to be cleared by reversing it out of the shredder.   If that did not work, workers would feed larger materials into the shredder in an effort to force the "hairball" through the machine.

{¶6}   On June 27, 2012, Darrell was assigned to pick the larger aluminum scraps out of the "turnings" onto the shaker table.   The "turnings" were shavings produced by drill presses.   At some point, Darrell observed a bluish-white smoke coming from the machine, and the turnings stopped passing through.   A coworker instructed Darrell to alert the maintenance staff, who inspected the shredder.   Either Pyles or Farrell instructed Darrell to start shoveling chunks of aluminum onto the conveyor belt, which

---

[1]The smaller shredder was purchased used.   Before Reserve Alloys acquired the unit, the hood had exploded and there was a fire.

were then dumped into the unit. The shredder continued to emit smoke. After Darrell finished shoveling the aluminum into the shredder, Pyles gave Darrell a "thumbs up" and Darrell proceeded to walk underneath the conveyor belt. He heard a "loud whoosh" and observed a wall of flames rushing toward him. He was on fire and rushed toward the exit while stripping off his burning clothes. He was life-flighted to MetroHealth Medical Center. Darrell sustained second-degree burns over 20 percent of his body, including his arms, face, hands, ears, chest, and neck. Darrell remained in the hospital until July 13, 2012. Over a year of further treatments and therapy followed. He received workers' compensation benefits for his injuries. His benefits had ceased about a month before his deposition in April 2015. Darrell testified that his benefits stopped because he reached maximum medical improvement, but that he had not returned to work at that time because of his mental state.

{¶7} In June 2014, Darrell and Pam filed a complaint against several defendants for the injuries Darrell sustained while at Reserve Alloys.[2] The complaint alleged that Darrell was set on fire and suffered significant burns in a machine explosion at a plant owned and controlled by Reserve Alloys and Reserve CA. The complaint further alleged that Iaconna, Zola, Clemmons, Farrell, and Pyles each played a role in the incident. Darrell raised claims for statutory workplace intentional tort (Count 1) against Reserve Alloys and Alliance; common law workplace intentional tort (Count 2) against

---

[2]A number of other defendants had been named in the complaint, all of whom were voluntarily dismissed by the plaintiffs.

Iaconna, Zola, Clemmons, Farrell, and Pyles; frequenters statute violations (Count 3) against Reserve Alloys and Alliance; premises liability (Count 4) against Reserve CA, Reserve Management Group, and Regency Technologies; and negligence (Count 5). Pam raised a claim for loss of consortium. Darrell also raised additional claims against other defendants that were later dismissed and are not germaine to this appeal.

{¶8} In November 2015, defendants filed their motion for summary judgment, maintaining that Darrell was a "borrowed employee" of Reserve Alloys at the time of the incident. Defendants maintained that they are immune under Ohio's Workers' Compensation Act and that Darrell is limited to pursuing a workplace intentional tort claim under R.C. 2745.01, which he cannot satisfy. Darrell opposed, and the defendants submitted a reply brief.

{¶9} In March 2016, the trial court granted summary judgment in favor of the defendants, finding "that there are no genuine issues of material fact, and that defendants are entitled to judgment as a matter of law as to all counts."

{¶10} It is from this order that plaintiffs appeal, raising the following single assignment of error for review.

Assignment of Error

The trial court erred, as a matter of law, by granting summary judgment upon the personal injury claims that have been raised and substantiated by plaintiff[s]-appellants.

{¶11} At appellate oral argument, both parties agreed that the "key issue in this case is whether or not [plaintiffs'] claims fall within the scope of Ohio's Workers'

Compensation Act or whether [plaintiffs] may pursue common tort liability claims against [defendants]."

{¶12} We review an appeal from summary judgment under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip. Co.*, 124 Ohio App.3d 581, 585, 706 N.E.2d 860 (8th Dist.1998). In *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201, the Ohio Supreme Court set forth the appropriate test as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264.
>
> {¶13} Once the moving party satisfies its burden, the nonmoving party "may not

rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 1996-Ohio-389, 667 N.E.2d 1197. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 1992-Ohio-95, 604 N.E.2d 138.

**{¶14}** In their summary judgment motion, the defendants argue that Darrell is a "borrowed employee" for workers' compensation purposes. Therefore, they maintain that they are afforded immunity against common law damage claims as set forth in R.C. 4123.74.

**{¶15}** R.C. 4123.74 provides immunity to employers when a legitimate employee/employer relationship exists and the employee was insured in the course of or arising out of his employment. It states:

> Employers who comply with [R.C.] 4123.35 shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

**{¶16}** In support of their argument, defendants rely on *Daniels v. MacGregor Co.*, 2 Ohio St.2d 89, 206 N.E.2d 554 (1965), and *Carr v. Cent. Printing Co.*, 2d Dist. Montgomery No. 16091, 1997 Ohio App. LEXIS 2526 (June 13, 1997). In *Daniels*, a temporary worker, who was employed by Manpower, Inc., fell off a ladder while working for MacGregor. MacGregor was a customer of Manpower. *Id.* at 89. MacGregor and Manpower had a written agreement, establishing the terms of their relationship. *Id.* at 90. The Ohio Supreme Court addressed whether MacGregor was entitled to immunity, even though the temporary worker was employed by Manpower. The court found that

> [w]here an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to

work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; *and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damage for any injury received by such employee in the course of or arising out of that work for such customer.* (Citations omitted).

(Emphasis added.) *Id.* at syllabus.

{¶17} In *Carr*, a temporary employee was injured while working on a press at the customer's place of business. The *Carr* court observed that the rule in *Daniels*, only applied where the customer has complied with the provisions of the Workers' Compensation Act. *Id.* at 5-6. The court reasoned:

In this regard, R.C. 4123.74 requires compliance with R.C. 4123.35, which specifically requires that an employer shall make premium payments into the workers' compensation fund on behalf of its employees. *And without such payments by the customer of the employment agency, either directly or indirectly, such customer cannot claim status as an employer nor the attending immunity provided by R.C. 4123.74.* *See* R.C. 4123.01(B)(2).

(Emphasis added.) *Id.*

{¶18} Courts have further recognized that both the employer and temporary agency are entitled to immunity when the workers' compensation premiums are paid. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist.1999). In *Russell*, the plaintiff-appellant was employed by cross-appellant (temporary agency), which placed him as a temporary worker in a factory operated by appellee. *Id.* at 303.

In the course of performing his work, appellant's hand became entangled and was pulled into a machine, causing serious and permanent injury. Appellant brought suit against appellee and cross-appellant. He alleged an employer intentional tort and negligence against both appellee and cross-appellant. *Id.* The cross-appellant was later dismissed from the case. Following the appeal, cross-appellant sought and was granted leave to intervene in order to maintain a subrogation claim if appellee was held liable. *Id. See also Nielsen v. Andersons, Inc.*, 6th Dist. Lucas No. L-06-1073, 2006-Ohio-5118, *discretionary appeal not allowed*, 112 Ohio St.3d 1472, 2007-Ohio-388, 861 N.E.2d 145.

{¶19} Thus, in determining whether defendants are afforded immunity under the Workers' Compensation Act, we must determine if Reserve Alloys contracted with Alliance and paid workers' compensation premiums for Darrell. Based on our de novo review of the record, it is not apparent that Reserve Alloys had a staffing agreement with Alliance and paid Alliance the workers' compensation premiums for Darrell.

{¶20} In the instant case, a review of the record reveals that Reserve Alloys required Darrell to be employed by Alliance in order to work at Reserve Alloys. This unusual employment arrangement first required Darrell to be interviewed for the position and hired by Iaconna at Reserve Alloys but then referred to a temporary agency regarding employment. Both Darrell and Reserve Alloys confirmed this arrangement, which was not uncommon for Reserve Alloys.

{¶21} The defendants submitted an affidavit from Reserve Alloys' Chief Financial Officer John Lentz ("Lentz"). In his affidavit, Lentz stated that he is the Chief Financial

Officer for Reserve Alloys and Regency Technologies.[3] Lentz averred that Reserve Alloys and Regency Technologies are sister companies. Lentz further averred that Alliance had an agreement with Regency Technologies to staff Reserve Alloys. According to Lentz, Darrell worked under the exclusive supervision and control of Reserve Alloys, which maintained full discretion and authority to instruct and direct Darrell. Lentz claimed that Reserve Alloys directly paid Alliance for the work Darrell performed. However, in their motion for summary judgment, defendants directly contradicted Lentz's affidavit by asserting that "[a]t the time of his injuries, [Darrell] was working through [Alliance] as a leased employee for [Reserve Alloys], through its parent company, Regency Technologies." Defendants did not include any documentation supporting the corporate relationship between Reserve Alloys and Regency Technologies.[4]

{¶22} It is clear that the staffing agreement at issue and referenced by Lentz indicates that Regency Technologies is the customer, not Reserve Alloys, who claims to be the customer for immunity purposes. To add more confusion as to which corporate entity is the customer, the addendum to the staffing agreement between Regency Technologies and Alliance lists RSR Partners, L.L.C. as "the company" and Alliance as

---

[3]According to Zola, General Manager at Reserve Alloys, Regency Technologies is another company working out of the facility where Reserve Alloys is located. There is a wall that splits the two companies.

[4]In their appellate brief, defendants assert that "Reserve Alloys leases its premises from Reserve CA pursuant to an Agreement of Lease under which Reserve Alloys has full possession of the premises as a tenant of Reserve CA."

the "temporary agency," and the time cards submitted to Alliance for the hours Darrell worked at Reserve Alloys lists RSR Partners, L.L.C. as the company.

{¶23} These contradictions, along with the unknown corporate relationship Reserve Alloys has with Regency Technologies, RSR Partners, L.L.C., and Reserve CA, create a genuine issue of material fact. It is not apparent that Reserve Alloys was the employer who in fact contracted with the temporary agency and paid the workers' compensation premiums.

{¶24} It follows then that the individual defendants (Iaconna, Zola, Clemmons, Farrell, and Pyles) are not entitled to summary judgment because their position also requires a finding that Darrell was a "borrowed employee" of Reserved Alloys. *Donnelly v. Herron*, 88 Ohio St.3d 425, 2000-Ohio-372, 727 N.E. 2d 882, syllabus (employees employed by the same employer are entitled to immunity under the Workers' Compensation Act under R.C. 4123.741). Accordingly, the trial court erred by granting defendants' motion for summary judgment.

{¶25} Therefore, the sole assignment of error is sustained.

{¶26} Judgment is reversed, and the matter is remanded for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MARY J. BOYLE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR