[Cite as *Thomas v. PSC Metals, Inc.*, 2018-Ohio-1630.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106084

**ANTHONY THOMAS, ET AL.**

PLAINTIFFS-APPELLANTS

vs.

**PSC METALS, INC., ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-864142

**BEFORE:** Boyle, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 26, 2018

**ATTORNEYS FOR APPELLANTS**

John P. O'Neil
Ryan M. Harrell
Elk & Elk Co., Ltd.
6105 Parkland Boulevard, Suite 200
Mayfield Heights, Ohio   44124


**ATTORNEYS FOR APPELLEES**

Matthew C. O'Connell
James M. Popson
David J. Hearty
Sutter O'Connell Co.
3600 Erieview Tower
1301 East 9th Street
Cleveland, Ohio   44114


MARY J. BOYLE, P.J.:

{¶1}   Plaintiffs-appellants, Anthony Thomas and Michelle Beverly, appeal the trial court's grant of summary judgment to defendants-appellees, PSC Metals, Inc. and its wholly owned subsidiary, PSC Metals-CAW, L.L.C. (hereinafter collectively referred to as "PSC").   In their sole assignment of error, appellants argue that the trial court's grant of summary judgment as to their negligence claim was in error because genuine issues of material facts exist and, thus, the trial court could not grant summary judgment as a matter of law.   Finding no merit to their assignment of error, we affirm.

## I. Procedural History and Factual Background

{¶2}   PSC is an automobile recycling and scrap metal business with numerous locations throughout Ohio.   Thomas began working for PSC after being hired through Callos Resource, L.L.C., a temporary staffing agency.

{¶3} Callos locates, hires, and refers temporary workers to potential employers. Those employers are Callos' customers and work in a number of different industries and positions. To find individuals qualified for their customers' particular industries, Callos' staff coordinators review an employee's work history, education, and training and interview each employee to determine their qualifications and appropriate placement. If hired by Callos, the workers may become payroll employees, meaning that Callos is responsible for issuing those workers' paychecks. Because they are hired by Callos, the temporary workers are considered to be employees of Callos for a designated period of time depending on the customer-employer, and when that time elapses, the employee becomes an employee of that customer-employer.

{¶4} In 2014, PSC became a Callos customer. Under the temporary labor agreement between the businesses, Callos would provide temporary labor services in exchange for a fee. The temporary labor services that Callos provided included payroll and paperwork services. Under the agreement, Callos would additionally provide and maintain liability insurance coverage for workers' compensation. PSC contracted with Callos to look for employees capable of performing yard work, such as loading, unloading, and burning scrap metal. Callos interviewed, hired, and referred Thomas to PSC, who was looking for a scrap burner. Thomas began working at PSC's scrap yard on Youngstown-Hubbard Road in Youngstown, Ohio.

{¶5} On August 22, 2014, less than three weeks after he began working at PSC, Thomas was torch cutting a steel-wheel pavement roller at PSC's scrap yard. Immediately after he began cutting, the clothing underneath his protective gear caught fire. Thomas's coworkers, who were nearby performing other tasks, heard Thomas's screams and put the fire out with a fire extinguisher approximately two or three minutes after it began. Unfortunately, the fire caused severe and permanent burns on Thomas's torso and legs.

**{¶6}** Thomas subsequently filed a workers' compensation claim against Callos and received workers' compensation benefits.[1] In addition to his workers' compensation claim, Thomas also applied to the Industrial Commission of Ohio for an additional award for violation of a specific safety requirement ("VSSR") against PSC. PSC settled the VSSR claim with Thomas and paid him $25,000.

**{¶7}** Later, Thomas and his wife, Beverly, filed a complaint in the Cuyahoga County Court of Common Pleas against PSC, Cleveland Auto Wrecking, Callos, five "John Doe" corporations" and five "John Does."[2] The complaint listed five causes of action, including four claims for negligence and intentional tort alleged separately against PSC, Callos, the John Doe corporations, and the John Does. The fifth cause of action was for loss of consortium against all of the defendants.

**{¶8}** PSC filed an answer and a cross-claim against Callos for indemnification. PSC subsequently filed an amended answer that did not include the cross-claim. Callos filed an answer to the complaint as well as to PSC's cross-claim and filed its own cross-claim against PSC for indemnity and contribution. The parties engaged in discovery and conducted a number of depositions.

**{¶9}** On May 12, 2017, PSC and Callos filed separate motions for summary judgment as to the plaintiffs' claims. Callos also filed a motion for summary judgment as to PSC's cross-claim against it.

---

[1] While the details concerning Thomas's workers' compensation benefits are not clear from the record, Thomas stated the following in his motion for summary judgment: "[A]ll workers compensation benefits provided to Plaintiff as a result of this incident have been channeled through a claim made against Callos, and not against PSC. * * * As previously noted by Callos employee Richard Evan, Plaintiff's claim is being run through the Callos coverage."

[2] As set forth in PSC's answer, the plaintiffs improperly identified PSC Metals-CAW, L.L.C. as Cleveland Auto Wrecking.

**{¶10}** Thomas and Beverly subsequently moved to voluntarily dismiss Callos from their lawsuit, which the court granted without prejudice and subsequently found Callos' motions for summary judgment were moot. Thomas and Beverly then filed a motion in opposition to PSC's motion for summary judgment. PSC filed a reply brief in support of its motion for summary judgment, and Thomas and Beverly filed a surreply brief.

**{¶11}** On July 31, 2017, the court granted PSC's motion for summary judgment. Thomas and Beverly now appeal that judgment but only as to their negligence claim.[3]

## II. Law and Analysis

**{¶12}** An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review means that this court independently "examine[s] the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. *Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, ¶ 9, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997).

**{¶13}** Under Civ.R. 56(C), summary judgment is properly granted when (1) "there is no genuine issue as to any material fact"; (2) "the moving party is entitled to judgment as a matter of law"; and (3) "reasonable minds can come to but one conclusion, and that conclusion is adverse to

---

[3]Even though the trial court's grant of motion for summary judgment did not address the claims against the John Doe defendants, we find that the trial court's order is still final and appealable under *Harris v. Plain Dealer Publishing Co.*, 40 Ohio App.3d 127, 129, 532 N.E.2d 192 (8th Dist.1988), and *Kohout v. Church of St. Rocco Corp.*, 8th Dist. Cuyahoga No. 88969, 2008-Ohio-1819, ¶ 7.

the party against whom the motion for summary judgment is made[.]"  *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).   Because it ends litigation, courts should carefully award summary judgment only after resolving all doubts in favor of the nonmoving party and finding that "reasonable minds can reach only an adverse conclusion" against the nonmoving party.   *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

{¶14} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party.   Once the moving party has met his burden, it is the non-moving party's obligation to present evidence on any issue for which that party bears the burden of production at trial."   *Robinson v. J.C. Penney Co.*, 8th Dist. Cuyahoga Nos. 62389 and 63062, 1993 Ohio App. LEXIS 2633, *14 (May 20, 1993), citing *Harless* and *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991).   "The moving party is entitled to summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial."   *Brandon/Wiant Co. v. Teamor*, 125 Ohio App.3d 442, 446, 708 N.E.2d 1024 (8th Dist.1998), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

{¶15} Under R.C. 4123.74, claims arising from injuries sustained in the course of employment are typically addressed exclusively by Ohio's Workers' Compensation statutes. This is because those statutes act

> as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers * * * are protected from liability for negligence.

*Maynard v. H.A.M. Landscaping, Inc.*, 166 Ohio App.3d 76, 2006-Ohio-1724, 849 N.E.2d 77, ¶ 12 (8th Dist.), citing *Blankenship v. Cincinnati Milacron Chem., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982).

{¶16} R.C. 4123.74 gives employers "who comply with section 4123.35 of the Revised Code" immunity "for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment[.]" R.C. 4123.35 mandates that employers "'make premium payments into the workers' compensation fund on behalf of its employees.'" *Hornyak v. Res. Alloys, L.L.C.*, 8th Dist. Cuyahoga No. 104302, 2016-Ohio-8489, ¶ 17, quoting *Carr v. Cent. Printing Co.*, 2d Dist. Montgomery No. 16091, 1997 Ohio App. LEXIS 2526 (June 13, 1997).

{¶17} Thus, to decide whether PSC is immune from the plaintiffs' negligence claim, we must determine if (1) PSC was Thomas's employer, and (2) whether PSC paid the workers' compensation premiums on behalf of Thomas.

{¶18} When an employee is hired by a staffing agency to work for a customer of the agency, that employee may have more than one employer for purposes of workers' compensation immunity. *Sellers v. Liebert Corp.*, 10th Dist. Franklin No. 05AP-1200, 2006-Ohio-4111, ¶ 7, citing *Daniels v. MacGregor Co.*, 2 Ohio St.2d 89, 206 N.E.2d 554 (1965). In *Daniels,* the Ohio Supreme Court stated,

> [w]here an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.

*Id.* at syllabus.

{¶19} The Ohio Supreme Court's language is clearly applicable to this case and establishes that Thomas was a PSC employee for purposes of workers' compensation. Callos, a staffing agency, entered into a contract with PSC to "provide temporary labor services" by hiring qualified individuals and assigning them to perform work for PSC. Subsequently, Callos hired Thomas and referred him to PSC, who assigned him to burn scrap metal.

{¶20} Despite the fact that the contract between Callos and PSC stated that individuals hired by Callos were not employees of PSC, the remainder of the record shows that PSC had the right to control the manner and means of Thomas's work performance and, thus, was Thomas's employer. Richard Evans stated that Callos did not provide any specific job training to its employees in relation to their duties at PSC and relied on PSC to provide training to the employees it assigned. He also stated that PSC provided the equipment and tools that Thomas used, supervised his day-to-day activities, and kept track of his hours. As a result, we find that PSC was Thomas's employer for workers' compensation purposes.

{¶21} Turning to the second inquiry, we must determine if PSC complied with the pertinent workers' compensation statutes. A customer of a staffing agency may pay the workers' compensation premiums either directly or indirectly to qualify for immunity under R.C. 4123.74. *Foran v. Fisher Foods, Inc.*, 17 Ohio St.3d 193, 194, 478 N.E.2d 998 (1985); *Hornyak,* 8th Dist. Cuyahoga No. 104302, 2016-Ohio-8489, at ¶ 17, citing *Carr,* 2d Dist. Montgomery No. 16091, 1997 Ohio App. LEXIS 2526. But the customer must be in "full compliance with the workers' compensation statutes at the time of the accident." *Maynard,* 166 Ohio App.3d 76, 2006-Ohio-1724, 849 N.E.2d 77, at ¶ 17, citing *Catalano v. Lorain*, 161 Ohio App.3d 841, 2005-Ohio-3298, 832 N.E.2d 134 (9th Dist.), and *Jones v. Multi-Color Corp.*, 108

Ohio App.3d 388, 670 N.E.2d 1051 (1st Dist.1995). An employer can show compliance with Ohio's workers' compensation statutes by obtaining certification from the Industrial Commission or by showing that the injured employee received workers' compensation benefits. *Maynard* at ¶ 18; *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 306, 733 N.E.2d 1186 (6th Dist.1999).

{¶22} Thomas argues that to obtain immunity, PSC had to pay workers' compensation premiums separate from those paid by Callos. Ohio appellate decisions, however, show that for purposes of immunity, it does not matter who — the customer-employer or the temporary staffing agency — pays the workers' compensation premiums. In *Russell*, the court stated, "[F]or an employer of a temporary agency to obtain immunity from a negligence suit, *someone* must pay the workers' compensation premiums and some evidence of that must be before the court." (Emphasis added.) *Id.* at 306. The court found that because it was "undisputed that appellant obtained workers' compensation benefits[,]" it was "reasonable to infer that someone * * * paid workers' compensation premiums for appellant[.]" *Id.*

{¶23} In *Hornyak*, we applied *Russell*. While we ultimately found that summary judgment was improper because there was no evidence that the temporary staffing agency and the customer had a staffing agreement providing for the payment of workers' compensation premiums, we stated that "both the employer and temporary agency are entitled to immunity when the workers' compensation premiums are paid." *Hornyak* at ¶ 18, citing *Russell*.

{¶24} Thomas and Beverly cite *Carr*, 2d Dist. Montgomery No. 16091, 1997 Ohio App. LEXIS 2526, in support of their position. In that case, the Second District found that granting summary judgment to the customer business was premature. *Id.* at 8. The court noted that there were genuine issues of material fact as to who paid the workers' compensation premiums

because there was not a "formal contract or written agreement relative to [the parties'] business or working relationship" and no remaining reliable evidence that the customer "was the real source of any premiums paid into the workers' compensation fund[.]" *Id.* at 7. The court concluded that "indirect payments in the amount due, when coupled with the day-to-day exercise of control, are * * * not enough merely to show that the premiums were charged back to the worker or passed on to any employment agency without reference to any hazards at the workplace[.]" *Id.*

{¶25} In this case, we find *Russell* is instructive and *Hornyak* and *Carr* are distinguishable. Foremost, Thomas does not deny that he received workers' compensation benefits from the Bureau of Workers' Compensation. Further, unlike *Russell* and *Carr*, the parties had a formal, written contract, which stated in section 5, "[Callos] and its employees shall be solely responsible for federal, state and municipal taxes on monies paid to it or them by [PSC] including, but not limited to workman's compensation, payroll, unemployment and income tax." Under section 7, Callos was to provide and maintain workers' compensation liability insurance during the life of the agreement. Section 7 also provided,

> [Callos] agrees to provide, in accordance with the applicable laws relating to Workers' Compensation or Employer's Liability Insurance, Insurance with respect to all of Contractor's employees entering upon Customer's property regardless of whether such insurance or coverage is mandatory or elective under applicable law, and Contractor shall defend, protect and save harmless [PSC] from and against all claims, suits and actions, including reasonable attorney's fees, arising from any failure of [Callos] to do so.

Unlike *Carr*, PSC specifically contracted for Callos to pay the workers' compensation premiums. In other words, while Callos made the payments, it only did so because PSC contracted for that

service in exchange for an agreed fee. *See Campbell v. Cent. Terminal Warehouse*, 56 Ohio St.2d 173, 175, 383 N.E.2d 135 (1978), fn. 1 ("It should be noted that although Central did not make any direct payments into the state insurance fund on behalf of appellant, Central was in compliance with the provisions of R.C. 4123.35 requiring every employer to pay into the fund the amount of premium fixed by the Industrial Commission.").

{¶26} In its proposal to PSC, Callos highlighted the fact that it "provides payroll services to [its] clients[,]" so that the clients can "[a]void the time, costs of paperwork and liabilities for probationary or seasonal employees including: * * * exposure to workers' compensation[.]" Additionally, during his deposition, Richard Evans, a Callos employee, stated that workers' compensation coverage was part of the negotiations between the parties. He stated that if one of their temporary workers is injured on PSC's site, PSC's rates and fees would increase because Callos' costs would increase as a result of the claim. (Tr. 27.) Finally, in his affidavit, Callos employee Donald Loree stated that "[p]art of the compensation that PSC Metals paid Callos under the Agreement went to paying the Workers' Compensation premiums and other costs of the employees assigned to PSC Metals." In other words, the evidence shows that PSC arranged and paid to have Callos cover the workers' compensation premiums.

{¶27} Thomas and Beverly seem to argue that regardless of Callos' payments, PSC also needed to pay into the state insurance fund; however, if we were to follow the plaintiffs' line of reasoning, we would be requiring PSC and Callos to both pay workers' compensation premiums, thereby making Thomas eligible for two sets of benefits. Based on the fact that Thomas pursued and received $25,000 from a VSSR claim against PSC and that allowing Thomas to pursue this negligence claim would allow him to "double dip" by receiving workers' compensation benefits

and damages from a workplace injury, we find that this is certainly not what the workers' compensation statutes allow.

{¶28} Further, while Thomas does not dispute that he received workers' compensation benefits, he argues that those benefits were only from Callos because according to the contract, Callos, not PSC, paid the workers' compensation premiums. Thomas's argument, however, fails because he filed a VSSR claim against PSC.

{¶29} "Under Ohio's workers' compensation system, a claimant may be entitled to separate additional compensation when the claimant's workplace injury results from an employer's violation of a specific safety requirement." *State ex rel. Camaco, L.L.C. v. Albu*, 151 Ohio St.3d 330, 2017-Ohio-7569, 88 N.E.3d 944, ¶ 5. In other words, "[a]n award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits. It is not covered by an employer's workers' compensation premiums." *State ex rel. Precision Steel Servs. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, 47 N.E.3d 109, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 673 N.E.2d 1301 (1997). "The calculation of the amount of a VSSR award is tied to the workers' compensation award for the underlying workplace injury[.]" *Camaco* at ¶ 6.

{¶30} In *State ex rel. Newman*, the Ohio Supreme Court found that customers of temporary service agencies are "employers" for VSSR claims and that "a worker injured while working for a customer of a temporary service agency can pursue a VSSR claim against that customer company." *Id.* at 273-274. While the circumstances presented in *Newman* are distinguishable, the holding shows that both the customer-employer and the temporary staffing agency are liable for VSSR claims under Ohio's workers' compensation statutes. Accordingly, although Callos paid the workers' compensation premiums and the certificate of liability coverage

listed Callos, not PSC, as the insured party, Thomas filed a VSSR claim under the workers' compensation statutes against PSC, and he received $25,000 as a result of that claim. Therefore, PSC was subject to liability under the workers' compensation statutes and is proof that it complied with R.C. 4123.74 and 4123.35.

{¶31} In sum, PSC and Callos were both Thomas's employer for purposes of workers' compensation under R.C. 4123.74 and 4123.35. PSC arranged for Callos to pay the workers' compensation premiums, both businesses were liable under the workers' compensation statutes, and Thomas received workers' compensation benefits. Based on that evidence, we find that a reasonable trier of fact could only come to one conclusion: PSC is immune from Thomas's negligence suit.

{¶32} Because we affirm the trial court's grant of summary judgment as to the plaintiffs' negligence claim, and because the plaintiffs are not appealing the trial court's grant of summary judgment as to their claim for employer intentional tort, we also affirm the grant of summary judgment as to their claim for loss of consortium, which is "a derivative cause of action dependent upon the viability of the primary cause of action." *Rivers v. Otis Elevator*, 8th Dist. Cuyahoga No. 99365, 2013-Ohio-3917, ¶ 29, citing *Tourlakis v. Beverage Distribs.*, 8th Dist. Cuyahoga No. 81222, 2002-Ohio-7252.

{¶33} Judgment affirmed.

It is ordered that appellees recover from appellants the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR