[Cite as *Wilson v. Rose Metals Industries, Inc.*, 2021-Ohio-4518.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

GREGORY WILSON, :

      Plaintiff-Appellant, :

                        No. 110461

      v. :

ROSE METALS INDUSTRIES, INC.,
ET AL., :

      Defendants-Appellees. :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 23, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-931373

*Appearances:*

Paul W. Flowers, Co., L.P.A., Paul W. Flowers, and Louis E. Grube; Plevin & Gallucci Co., L.P.A., David R. Grant, and Frank L. Gallucci, III, *for appellant.*

Pelini, Campbell & Williams, L.L.C., Craig G. Pelini, and Kristen E. Campbell Traub, *for appellee.*

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Plaintiff-appellant Gregory Wilson ("Wilson") brings the instant appeal challenging the judgment of the Cuyahoga County Court of Common Pleas granting summary judgment on his claims against defendant-appellee Rose Metal

Industries, LLC[1] ("Rose Metal"). Wilson argues that genuine issues of material fact remain regarding his personal injury claims against Rose Metal. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} Target Technical Services ("Target Technical") is an agency that provides temporary workers to employers. Rose Metal and Target Technical entered into an agreement whereby Target Technical would assign temporary workers to Rose Metal. Each worker would be assigned for a 90-day probationary period.

{¶ 3} During this period, Rose Metal reported to Target Technical the number of hours the temporary employee worked. Target Technical then provided Rose Metal with an invoice for the hours, and Rose Metal paid Target Technical the amount of the invoice. The agreement required Rose Metal to pay a markup of 50 percent. Per the agreement, Target Technical provided payroll, federal and state taxes, workers' compensation, and unemployment compensation for the workers.

{¶ 4} Wilson was assigned by Target Technical to Rose Metal, where he performed work as a welder. The plant manager at Rose Metal instructed Wilson how to perform his job, how he would be positioned, and how he would clock in and out each day. The manager also administered a welding skills test to Wilson and

---

[1] Rose Metal was named in the caption of the complaint as "Rose Metals Industries, Inc.," and the parties have utilized "Rose Metal" and "Rose Metals" interchangeably throughout the proceedings. However, we note that on October 30, 2020, the parties filed a stipulation that "Defendant Rose Metal Industries, LLC is substituted for Defendant Rose Metal [sic] Industries, Inc.," which was accepted in a journal entry by the trial court on November 9, 2020.

discussed safety matters, including equipment to be worn. Wilson was provided with tools and equipment, including a welding tool gun, by Rose Metal and was taught how to weld Rose Metal products.

{¶ 5} After working for approximately one month at Rose Metal, Wilson was injured on the job when a two-ton bundle of metal beams fell off of a forklift and onto his leg. His left leg was crushed by the beams, and his right wrist was fractured. His leg was ultimately amputated above the knee.

{¶ 6} Wilson filed suit alleging claims for common law negligence and frequenter statute liability against Rose Metal[2] and seeking a declaratory judgment against the Bureau of Workers' Compensation regarding its potential subrogation rights.

{¶ 7} Rose Metal moved for summary judgment, arguing that (1) it is entitled to statutory immunity under R.C. 4123.74; (2) Wilson cannot meet his burden to establish an employer intentional tort under R.C. 2745.01; (3) OSHA violations do not support a cause of action; and (4) Ohio's frequenter statute does not apply.

{¶ 8} In opposition, Wilson asserted that Rose Metal was not entitled to immunity under R.C. 4123.74 because Wilson was not an employee of Rose Metal, and Rose Metal was not in compliance with the workers' compensation statutes because only Target Technical paid the workers' compensation premiums for

---

[2] The complaint also named defendants Rose Iron Works, LLC, and Rose Iron Works Collections, LLC; however, they were voluntarily dismissed from the action.

Wilson. Wilson argued that genuine issues of material fact remain as to his employment status at the time of the incident. Finally, Wilson noted that he did not assert an employer intentional tort claim and thus, Rose Metal's arguments in favor of summary judgment on any such claim were irrelevant.

{¶ 9} The trial court granted summary judgment in favor of Rose Metal without analysis. The remaining claims were dismissed without prejudice. Wilson filed the instant appeal, raising one assignment of error for our review:

> The trial court erred, as a matter of law, by granting summary judgment upon all claims in favor of defendant[s]-appellees.

## II. Law and Analysis

{¶ 10} An appellate court reviews a trial court's decision to grant summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). De novo review means that this court independently "examine[s] the evidence to determine if as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980). In other words, we review the trial court's decision without according the trial court any deference. *Smith v. Gold-Kaplan*, 8th Dist. Cuyahoga No. 100015, 2014-Ohio-1424, ¶ 9, citing *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997).

{¶ 11} Under Civ.R. 56(C), summary judgment is properly granted when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled

to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 12} "The burden of showing that no genuine issue exists as to any material fact falls upon the moving party. Once the moving party has met his burden, it is the non-moving party's obligation to present evidence on any issue for which that party bears the burden of production at trial." *Robinson v. J.C. Penney Co.*, 8th Dist. Cuyahoga Nos. 62389 and 63062, 1993 Ohio App. LEXIS 2633, 14 (May 20, 1993), citing *Harless* and *Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108, 570 N.E.2d 1095 (1991). "The moving party is entitled to summary judgment if the nonmoving party fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Brandon/Wiant Co. v. Teamor*, 125 Ohio App.3d 442, 447, 708 N.E.2d 1024 (8th Dist.1998), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

{¶ 13} Claims arising from injuries sustained in the course of employment are generally addressed exclusively by Ohio's workers' compensation statutes. Those statutes act

> "as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers * * * are protected from liability for negligence."

*Thomas v. PSC Metals, Inc.*, 2018-Ohio-1630, 143 N.E.3d 1117, ¶ 13 (8th Dist.), quoting *Maynard v. H.A.M. Landscaping, Inc.*, 166 Ohio App.3d 76, 2006-Ohio-1724, 849 N.E.2d 77, ¶ 12 (8th Dist.), citing *Blankenship v. Cincinnati Milacron Chems., Inc.*, 69 Ohio St.2d 608, 433 N.E.2d 572 (1982).

{¶ 14} R.C. 4123.74 gives immunity to employers who comply with R.C. 4123.35 "for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment[.]" R.C. 4123.35 mandates that employers "'make premium payments into the workers' compensation fund on behalf of [their] employees.'" *Hornyak v. Res. Alloys, L.L.C.*, 8th Dist. Cuyahoga No. 104302, 2016-Ohio-8489, ¶ 17, quoting *Carr v. Cent. Printing Co.*, 2d Dist. Montgomery No. 16091, 1997 Ohio App. LEXIS 2526 (June 13, 1997) ("*Carr I*").

{¶ 15} Thus, to determine whether Rose Metal is immune from Wilson's negligence claim, we must determine (1) if Wilson was Rose Metal's employee; and (2) whether Rose Metal paid workers' compensation premiums on behalf of Wilson.

{¶ 16} Rose Metal argues that Wilson was its employee because Target Technical had nothing to do with the day-to-day activities of Wilson while he was on the job at Rose Metal, and Rose Metal controlled the means and manner of Wilson's employment. While Target Technical was the entity that provided paychecks to Wilson, Rose Metal directed Wilson as to how to do his job and explained what was expected of him. No one from Target Technical was present at Rose Metal or involved in any aspect of Wilson's daily job activities.

{¶ 17} When an employee is hired by a staffing agency to work for a customer of the agency, that employee may have more than one employer for purposes of workers' compensation immunity. *Sellers v. Liebert Corp.*, 10th Dist. Franklin No. 05AP-1200, 2006-Ohio-4111, ¶ 7, citing *Daniels v. MacGregor Co.*, 2 Ohio St.2d 89, 206 N.E.2d 554 (1965). In *Daniels*, the Supreme Court of Ohio stated,

> [w]here an employer employs an employee with the understanding that the employee is to be paid only by the employer and at a certain hourly rate to work for a customer of the employer and where it is understood that that customer is to have the right to control the manner or means of performing the work, such employee in doing that work is an employee of the customer within the meaning of the Workmen's Compensation Act; and, where such customer has complied with the provisions of the Workmen's Compensation Act, he will not be liable to respond in damages for any injury received by such employee in the course of or arising out of that work for such customer.

*Id.* at syllabus.

{¶ 18} The language in *Daniels* is clearly applicable to this case and establishes that Wilson was a Rose Metal employee for purposes of workers' compensation. Target Technical, a staffing agency, entered into a contract with Rose Metal to provide temporary labor services by hiring qualified individuals and assigning them to perform work for Rose Metal. Target Technical hired Wilson and assigned him to Rose Metal.

{¶ 19} Wilson argues that he was not Rose Metal's employee because he had his own welding equipment, including a helmet, gloves, goggles, steel-toed boots, and a tool bag containing welding tools that he brought to Rose Metal. Wilson

further points to the testimony of the controller of Rose Metal, who stated that he did not consider Wilson to be an "employee" of Rose Metal. Wilson additionally contends that he was ultimately under Target Technical's sole direction and control because they told him where he was assigned and provided instructions on how to act and conduct himself while at an assignment. Finally, Wilson received his paycheck solely from Target Technical and considered himself to be an employee of Target Technical.

{¶ 20} However, Wilson also stated that a Rose Metal employee instructed him what to do at his job and how to weld Rose Metal products. Further, no one from Target Technical was present at Rose Metal while he was working.

{¶ 21} Despite the fact that neither the controller nor Wilson considered him to be an employee of Rose Metal, the remainder of the record shows that Rose Metal had the right to control the manner and means of Wilson's performance of the work and, thus, was Wilson's employer. Target Technical simply controlled the company to which Wilson was assigned and instructed him how to conduct himself; this is not the same as controlling the *performance of the work*, as stated in *Daniels*, 2 Ohio St.2d 89, 206 N.E.2d 554. As a result, for workers' compensation purposes, we find that Rose Metal was Wilson's employer.

{¶ 22} Turning to the second inquiry, we must determine if Rose Metal complied with the workers' compensation statutes. In order to qualify for immunity under R.C. 4123.74, a customer of a staffing agency may pay the workers' compensation premiums either directly or indirectly. *Foran v. Fisher Foods, Inc.*,

17 Ohio St.3d 193, 194, 478 N.E.2d 998 (1985); *Hornyak*, 8th Dist. Cuyahoga No. 104302, 2016-Ohio-8489, at ¶ 17, citing *Carr*, 2d Dist. Montgomery No. 16091, 1997 Ohio App. LEXIS 2526.

{¶ 23} However, the customer must be in "full compliance with the workers' compensation statutes at the time of the accident." *Maynard*, 166 Ohio App.3d 76, 2006-Ohio-1724, 849 N.E.2d 77, at ¶ 17, citing *Catalano v. Lorain*, 161 Ohio App.3d 841, 2005-Ohio-3298, 832 N.E.2d 134 (9th Dist.), and *Jones v. Multi-Color Corp.*, 108 Ohio App.3d 388, 670 N.E.2d 1051 (1st Dist.1995). An employer can show compliance with Ohio's workers' compensation statutes by obtaining certification from the Industrial Commission or by showing that the injured employee received workers' compensation benefits. *Maynard* at ¶ 18; *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 306, 733 N.E.2d 1186 (6th Dist.1999).

{¶ 24} In the instant matter, it is undisputed that Wilson applied for and received workers' compensation benefits. Further, the agreement between Target Technical and Rose Metal provided that Target Technical would pay the workers' compensation premiums for Wilson.

{¶ 25} Wilson argues that, to obtain immunity, Rose Metal was required to show that it was the "real source" of the workers' compensation premiums. "Ohio appellate decisions, however, show that for purposes of immunity, it does not matter who — the customer-employer or the temporary staffing agency — pays the workers' compensation premiums." *Thomas*, 2018-Ohio-1630, 143 N.E.3d 1117, at ¶ 22. In *Russell*, the Sixth District stated, "[F]or an employer of a temporary agency to obtain

immunity from a negligence suit, someone must pay the workers' compensation premiums and some evidence of that must be before the court." *Id.* at 306. The *Russell* Court found that because it was "undisputed that appellant obtained workers' compensation benefits[,]" it was "reasonable to infer that someone * * * paid workers' compensation premiums for appellant[.]" *Id.*

{¶ 26} This court considered the same issue in *Hornyak*, 8th Dist. Cuyahoga No. 104302, 2016-Ohio-8489, and applied *Russell*, 135 Ohio App.3d 301, 733 N.E.2d 1186. While we ultimately found that summary judgment was improper because there was no evidence that the temporary staffing agency and the customer had a staffing agreement providing for the payment of workers' compensation premiums, we stated that "both the employer and temporary agency are entitled to immunity when the workers' compensation premiums are paid." *Hornyak* at ¶ 18, citing *Russell.*

{¶ 27} In *Carr I*, the Second District determined that granting summary judgment to the customer business was premature due to genuine issues of material fact related to who paid the workers' compensation premiums because there was not a "formal contract or written agreement relative to [the parties'] business or working relationship" and no reliable evidence that the customer "was the real source of any premiums paid into the workers' compensation fund[.]" *Id.* at 7. The *Carr I* Court concluded that "indirect payments in the amount due, when coupled with the day-to-day exercise of control, are * * * not enough merely to show that the premiums

were charged back to the worker or passed on to any employment agency without reference to any hazards at the workplace[.]" *Id.*

{¶ 28} This matter is distinguishable from *Hornyak* and *Carr I.* It is undisputed that Wilson received workers' compensation benefits from the Bureau of Workers' Compensation. Moreover, unlike the above cases, there was evidence that Rose Metal specifically contracted for Target Technical to pay the workers' compensation premiums for the workers it assigned to Rose Metal. The parties had a formal, written agreement, which stated in two separate places that Target Technical would be responsible for workers' compensation premiums for its contracted workers.

{¶ 29} The agreement shows that Rose Metal paid a 50 percent markup fee to Target Technical. It is not relevant that there was no evidence presented as to what specifically the markup was to cover, such as workers' compensation premiums. Rather, for purposes of our review, it only matters that the parties agreed that Target Technical would pay the workers' compensation premium and Rose Metal would pay to Target Technical an additional fee above the regular wages paid for the temporary worker.

{¶ 30} In other words, while Target Technical made the payments, it did so because Rose Metal contracted for that service in exchange for an agreed fee. *See Campbell v. Cent. Terminal Warehouse*, 56 Ohio St.2d 173, 175, 383 N.E.2d 135 (1978), fn. 1 ("It should be noted that although Central did not make any direct payments into the state insurance fund on behalf of appellant, Central was in

compliance with the provisions of R.C. 4123.35 requiring every employer to pay into the fund the amount of premium fixed by the Industrial Commission."). Thus, Rose Metal indirectly paid for Wilson's workers' compensation premiums.

{¶ 31} Consequently, both prongs of the test have been met, and Rose Metal is entitled to statutory immunity under R.C. 4123.74. The trial court properly granted summary judgment to Rose Metal, and Wilson's sole assignment of error is overruled.

### III. Conclusion

{¶ 32} The trial court did not err in granting summary judgment in favor of Rose Metal. For purposes of workers' compensation, Rose Metal was Wilson's employer and was in compliance with R.C. 4123.35 at the time of the accident. Thus, Rose Metal was entitled to immunity on Wilson's claims, and Wilson's sole assignment of error is overruled.

{¶ 33} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
LISA B. FORBES, J., CONCUR